## ESTELLE et al. v. HART et al.
### No. 1575—5929.

Commission of Appeals of Texas, Section A.
Dec. 22, 1932.

W. A. Morrison, of Cameron, and J. W. Thomas, of Belton, for plaintiffs in error.

E. A. Wallace and Henderson, Kidd & Henderson, all of Cameron, and J. P. Alexander, of Waco, for defendants in error.

HARVEY, P. J.:

This suit involves the foreclosure of two judgment liens on two separate tracts of land in Milam county. One of the judgment liens is held by Mrs. G. Hart and the other by Mrs. Jack O. Allen. The respective money judgments secured by said judgment liens were duly recovered against L. C. Estelle by Mrs. Hart and Mrs. Allen, respectively, in the year 1928, and both are still subsisting. Each of said judgments against L. C. Estelle was duly abstracted, and, on May 12, 1928, such abstract was duly recorded in the office of the county clerk of Milam county. No question going to the regularity of such abstracting and recording is involved in the case. The controversy herein, in respect of said judg-

ment liens, relates exclusively to the rights of Mrs. Hart and Mrs. Allen, as holders of said liens, in respect of two separate tracts of land in Milam county—one of which is known as the "Mitchell tract" and the other as the "Atkinson tract." With respect to the Mitchell tract, Mrs. Hart and Mrs. Allen sought foreclosure of said judgment liens as against said L. C. Estelle and the First National Bank of Cameron, Tex., which will be hereinafter called the bank. On this branch of the case the trial court peremptorily instructed the jury to return a verdict for the bank, and judgment was entered in favor of the bank denying Mrs. Hart and Mrs. Allen a foreclosure of their judgment liens.

With respect to the Atkinson tract, Mrs. Hart and Mrs. Allen sought foreclosure of their said liens as against said L. C. Estelle, and the latter's two sons, L. C. Estelle, Jr., and John R. Estelle. In this respect, special issues were tried to a jury, resulting in a judgment in favor of the two last named, denying Mrs. Hart and Mrs. Allen a foreclosure as sought by them. It is unnecessary, for present purposes, to state the disposition of the case by the trial court, with reference to other parties to the suit. On appeal, the Court of Civil Appeals affirmed the judgment of the trial court, in part, and reversed and remanded, in part, as will be hereinafter more specifically stated. 34 S.W.(2d) 665. The application for writ of error made by the First National Bank of Cameron, and that made by L. C. and John R. Estelle, and that made by Mrs. Hart and Mrs. Allen, have been granted by the Supreme Court. The two applications last mentioned were granted because of the granting of the bank's application.

We shall first take up the questions which involve the Mitchell tract. The facts relating to this branch of the case, so far as need be stated here, are substantially as follows: On October 28, 1926, L. C. Estelle, being the owner of the Mitchell tract, executed a deed of trust, covering said tract, to Gillis, as trustee, to secure said Estelle's note for $3,-000, which note was held by a Mrs. A. F. Mitchell. In said deed of trust it was provided as follows:

"But, in case of failure or default in the payment of said promissory note together with the interest thereon accrued, according to its terms and face, at the maturity of the same, then, in such event, said Mrs. A. F. Mitchell is by these presents fully authorized and empowered, and it is made his special duty, at the request of the said W. G. Gillis, Trustee, at any time made after the maturity of said promissory note, to sell the said above described property to the highest bidder, for cash, at public outcry, in front of the Court House door of said Milam County, on the first Tuesday of any month, between the hours of 10 o'clock a. m. and 4 o'clock p. m. first giving notice of the time, place and terms of sale for at least twenty days successively next before the day of sale, by posting up written or printed notices of such sale at three public places in the County of Milam, State of Texas, one of which shall be at the court house door of said County, and by giving such other notice as is or may be required by law, and after said sale, as aforesaid, to make to the purchaser or purchasers thereof a good and sufficient deed in law to the property so sold, with the usual covenants and warrants, and to receive the proceeds of said sale, and the same to apply to the payment of said note, the interest thereof accrued, and the expense of executing said trust, including five per cent. commission to said Trustee, holding the remainder thereof subject to the order of them the said L. C. Estelle and Fannie Estelle.

"It is expressly agreed that the recitals in the conveyance to the purchaser shall be full evidence of the truth of the matters therein stated, and all prerequisites to said sale shall be presumed to have been performed; and it is hereby specially provided that should the said W. G. Gillis, Trustee, from any cause whatever, fail or refuse to act, or become disqualified from acting as such Trustee, then the said Mrs. A. F. Mitchell shall have full power to appoint a substitute, in writing, who shall have the same powers as are hereby delegated to the said W. G. Gillis, Trustee, and does by these presents fully and absolutely ratify and confirm any and all acts which the said W. G. Gillis, Trustee, or his substitute as herein provided, may do in the premises by virtue hereof."

As already shown, the abstracts of the Hart and Allen judgments against L. C. Estelle were duly filed and recorded on May 12, 1928. After this, the bank brought suit against Estelle, and, on January 3, 1929, had an attachment levied on the Mitchell tract. That suit resulted in a judgment in favor of the bank against Estelle for about $1,400, and foreclosure of the attachment lien. On July 2, 1929, one McIntosh, one of the directors of the bank, and who, at the instance of the bank, had purchased the Mitchell note and lien for the bank, and still held same for the bank, obtained a refusal of Gillis to act as trustee under the above deed of trust, and appointed Wallace as substitute trustee. On the same day, McIntosh, in writing, requested Wallace, as substitute trustee, to sell the land for the purpose of satisfying said note. Wallace proceeded to advertise the land for sale on August 6, 1929, under said deed of trust. At said sale McIntosh, the only bidder, bought in the land, for the bank, for the sum of $3,-750, and credited the amount of his bid on the debt and expenses of sale. Wallace, as substitute trustee, conducted said sale and executed to McIntosh a deed to the land, and the latter thereupon deeded the land to the bank. A few days after said sale was made

and said deeds were executed, L. C. Estelle, for a valuable consideration moving from the bank, executed to the bank a written instrument in which he ratified and confirmed the sale and deed which had been made by Wallace, as substitute trustee.

Keeping in mind the foregoing facts, questions going to the validity of the sale by Wallace, as substitute trustee, will now be considered. The power of sale which was created by L. C. Estelle in and by deed of trust of October 28, 1926, under which Wallace assumed to act, was by the terms of that instrument conferred on Mrs. Mitchell alone. The language of the instrument, in this respect, is not susceptible of any other meaning. Regardless, therefore, of other alleged irregularities in the sale conducted by Wallace, no valid sale was effected under said power, for the simple reason that said power was not exercised by Mrs. Mitchell, the person to whom same was intrusted. Fuller v. O'Neil, 69 Tex. 349, 6 S. W. 181, 5 Am. St. Rep. 59; Boone v. Miller, 86 Tex. 74, 23 S. W. 574; Michael v. Crawford, 108 Tex. 352, 193 S. W. 1070. The bank contends, however, that an inquiry as to the proper exercise of a power of sale which has been granted by a mortgagor is not available to any one except the mortgagor and his privies in estate. The case of Buvens v. Brown, 118 Tex. 551, 18 S.W.(2d) 1057, is relied on as sustaining this contention on principle. This may be true, perhaps, so far as the inquiry relates to divestiture of the title of the mortgagor and the investing of same in the purchaser at such a sale. But a sale of the mortgaged property under such a power, if the power be regularly exercised in conformity with the terms prescribed, imports something more than a mere transfer of the title to the property. It also has effect to cut off all the rights of junior lienholders respecting the property sold. Hampshire v. Greeves, 104 Tex. 620, 143 S. W. 147. It is perfectly plain, therefore, that a junior lienholder has an interest in the subject-matter of such a sale to the extent, at least, of his rights in the property sold, and, to say the least, is entitled to show the improper exercise of the power of sale, and thus show the invalidity of the sale to cut off his rights. This Mrs. Hart and Mrs. Allen have done.

We now pass to a consideration of the situation, respecting the Mitchell tract, as it exists between Mrs. Hart and Mrs. Allen, on one hand, and the bank on the other. Nobody contends that the bank does not now hold the title to the land which was formerly held by L. C. Estelle. The ratification, by the latter, of the sale by Wallace, as substitute trustee, had effect to validate such sale as to Estelle. This aspect of the case is governed, therefore, by the principles laid down by our Supreme Court in McDonald v. Miller, 90 Tex. 309, 39 S. W. 89. In legal effect the situation is the same as if Estelle himself had deeded the land to the bank, as holder of the senior mortgage debt, in satisfaction of that debt. The bank is invested with the entire equitable title, shielded by the prior mortgage lien of the bank, which equity keeps alive for that purpose. The bank also holds the equity of redemption from that lien, and that equity stands charged with the judgment liens of Mrs. Hart and Mrs. Allen. In a word, the only property right, in respect of the Mitchell tract, which is subject to these judgment liens, is the equitable right to redeem the land from the bank's senior mortgage lien by paying the senior mortgage debt, and thus acquire full title to the land. The bank, however, has, in turn, the right to defeat a foreclosure sale under said judgment liens by paying, prior to such sale, the indebtedness secured by the judgment liens. In this connection, it is noted that there is no testimony to show that the value of the land did not exceed the senior mortgage debt. On the contrary, the converse of this was shown by the undisputed testimony. This being the state of the case, in this respect, the trial court erred in refusing a foreclosure of the judgment liens of Mrs. Hart and Mrs. Allen. In order to have defeated such foreclosure, without paying the judgment lien debts, it was incumbent on the bank to prove, as a fact, that the value of the land did not exceed the senior mortgage debt for which the land was taken. With that fact proved, the trial court would have been justified in refusing to foreclose said judgment liens, for the reason the right of redemption, against which the latter liens exist, would have been shown to be but an empty one. Silliman v. Gammage, 55 Tex. 365; Fidelity & Deposit Co. of Maryland v. Albrecht (Tex. Civ. App.) 171 S. W. 819 (writ refused); Citizen's Nat. Bank v. Strauss, 29 Tex. Civ. App. 407, 69 S. W. 86 (writ refused).

The contention of the bank, to the effect that a tender to the bank, of the amount of the senior mortgage debt held by it, is a prerequisite to a foreclosure of the judgment liens in question, is overruled. Had such a tender been made by Mrs. Hart and Mrs. Allen, the bank would not have been required to accept it. McDonald v. Miller, supra.

With reference to the branch of the case involving the Mitchell tract, the Court of Civil Appeals, in reversing and remanding the cause, instructed the trial court, among other instructions, to foreclose the bank's senior mortgage lien on the Mitchell tract, and also the judgment liens of Mrs. Hart and Mrs. Allen as against the land itself. Such instructions are not in keeping with the rights of the respective parties, as hereinabove set out. The bank does not seek, in this suit, a foreclosure of its senior mortgage lien which equity treats as still subsisting for the protection of the bank, and it cannot be compelled to submit to such foreclosure at the

instance of the junior lienholders, Mrs. Hart and Mrs. Allen. McDonald v. Miller, supra.

We now turn to the branch of the case which involves the Atkinson tract. The controversy here, relative to this branch of the case, is between Mrs. Hart and Mrs. Allen on the one hand, and L. C. Estelle, Jr., and John R. Estelle, on the other. Mrs. Hart and Mrs. Allen, in pleading their cause of action with reference to said judgment liens, alleged facts showing the regularity and subsistence of their judgment liens, and, in addition, alleged facts which, if taken as true, would establish the ownership of the Atkinson tract in L. C. Estelle, both at the time of trial and the time said abstracts of judgments were recorded; and further that any right or claim of L. C. Estelle, Jr., and John R. Estelle, if any they had, was subordinate to the said judgment liens. The two last named, while in effect conceding that L. C. Estelle held the legal title to the land, pleaded an equitable title in themselves. The nature and basis of this equitable title, as pleaded by the Estelle sons, will appear further on. Further details are not necessary for a discussion of the particular question which will be now taken up. Mrs. Hart and Mrs. Allen contend that the trial court erred in refusing their request for a peremptory instruction to the jury to return a verdict in their favor against L. C. Estelle, Jr., and John R. Estelle. As furnishing ground for such contention, Mrs. Hart and Mrs. Allen say that the two last named defendants, for the purpose of securing the right, under district court rule 31, to open and conclude the argument to the jury, and the introduction of evidence, in due season admitted, in conformity to the provisions of said court rule, the cause of action alleged by Mrs. Hart and Mrs. Allen with reference to the Atkinson tract. The record before us does not, however, disclose such a situation. It is quite true that there appears in the transcript a paper which purports to be an admission by the Estelle sons, as prescribed by said court rule, and which bears the file mark of the clerk; but there is nothing in the entire record to show that such paper, or such purported admission, was ever presented to the trial court or the jury, or that the trial court took any action at all with reference thereto. It does not appear, even, that said defendants opened and concluded the argument and the introduction of evidence in the case. Regardless, therefore, of other considerations, the contention of Mrs. Hart and Mrs. Allen in this respect is overruled, for the reasons shown.

This brings us to the question as to the operation of the judgment liens of Mrs. Hart and Mrs. Allen as applied to the equitable title which the Estelle sons claim to the Atkinson tract. The relevant facts are substantially as follows: In the year 1911, one Atkinson, the owner of said tract, deeded same to L. C. Estelle. The consideration therefor was paid by Estelle from the separate funds of his wife, who was then living. Mrs. Estelle subsequently died intestate, leaving her husband, and their two sons, L. C. Estelle, Jr., and John R. Estelle, surviving. In 1925, after Mrs. Estelle died, L. C. Estelle executed to his two sons the following instrument relating to the Atkinson tract:

"Belton 9–2–25

"To John R. & L. C. Estelle, Jr. This is to show that the Home place in Cameron, Gardner Addition to Cameron bought of B. P. Atkinson, was bought by your mother with her own money for you boys as a home & I do not hold any of my money in to this property & I want you to know I drew $500.-00 out of courts at Milam Co. Cameron, Texas, which belong to you Boys & Give to you Boys all my rights & Interest in this property.

"L. C. Estelle.

"This to be put away in event anything should happen to me. This will show your rights & title to this property."

The above instrument was never put of record, and no notice of the instrument or of the rights of L. C. Estelle, Jr., and John R. Estelle has been brought home to Mrs. Hart and Mrs. Allen, prior to the recording of the abstracts of judgment against L. C. Estelle. Upon the foregoing facts, some of which are undisputed, and others established by the verdict of the jury on special issues, the trial court entered judgment in favor of L. C. Estelle, Jr., and John R. Estelle, denying a foreclosure of the judgment liens of Mrs. Hart and Mrs. Allen. The Court of Civil Appeals held in effect (1) that, since the consideration paid to Atkinson for said tract of land was the separate funds of Mrs. Estelle, the latter's husband, L. C. Estelle, took the title to the land under the deed from Atkinson, charged with a resulting trust in favor of her (Mrs. Estelle); (2) that this resulting trust in favor of Mrs. Estelle, constituting as it did the equitable title to the land, descended, under the statutes of descent and distribution, to her said two sons, at her death, charged with a life estate in one-third of the land in favor of her husband, L. C. Estelle; (3) that neither the accrual of the equitable title to Mrs. Estelle as beneficiary of said resulting trust, nor its transmission, at her death, to her two sons by virtue of the inheritance statutes, falls under contemplation of those provisions of article 6627, which provide that: "All bargains, sales and other conveyances whatever, of any land, tenements and hereditaments, whether they may be made for passing any estate of freehold of inheritance or for a term of years * * * shall be void as to all creditors, * * * unless they shall be acknowledged or proved and filed with the [county] clerk,

to be recorded as required by law"; consequently the judgment liens of Mrs. Hart and Mrs. Allen did not attach to the interest in the land which the Estelle sons inherited from their mother, regardless of the fact that the above-quoted instrument, which shows a written acknowledgment by L. C. Estelle of their said interest, has never been put of record; (4) that the gift by L. C. Estelle to his two sons, of his life estate in one-third of said land, which is purported by said instrument, constitutes a conveyance of said life estate, within the meaning of the terms of the above statute, and, since same has not been recorded as there provided, is void as to Mrs. Hart and Mrs. Allen, who had no notice thereof at the time their judgment liens arose by virtue of Article 5449 of the Statutes.

Each of these holdings of the Court of Civil Appeals is correct. A discussion of them would be but to repeat, in substance, what has been so well said by Chief Justice McClendon, speaking for said court. Abundant authority for the above holdings of that court may be found in the following decisions of our Supreme Court; Johnson v. Darr, 114 Tex. 516, 272 S. W. 1098; McKamey v. Thorp, 61 Tex. 648; Parker v. Coop, 60 Tex. 111; Grace v. Wade, 45 Tex. 522.; Yoe v. Montgomery, 68 Tex. 338, 4 S. W. 622; Barnett v. Squyres, 93 Tex. 193, 54 S. W. 241, 77 Am. St. Rep. 854; Central City Trust Co. v. Waco Building Ass'n, 95 Tex. 48, 64 S. W. 998; Paris Grocery Co. v. Burks, 101 Tex. 106, 105 S. W. 174; McKeen v. Sultenfuss, 61 Tex. 325; Blankenship v. Douglas, 26 Tex. 227, 82 Am. Dec. 608.

The Court of Civil Appeals affirmed the judgment of the trial court, in favor of L. C. Estelle, Jr., and John R. Estelle, except as to the life estate in one-third of the Atkinson tract which they acquired from their father; but in all other respects the judgment of the trial court was reversed and the cause remanded, with instructions. In the respect that the judgment of the Court of Civil Appeals affirms the judgment of the trial court, as stated, and in all the respects that the trial court's judgment is reversed, and the cause remanded, the judgment of the Court of Civil Appeals should be affirmed, and we so recommend. We further recommend that all instructions of the last-named court be set aside, and that the trial court be instructed to enter judgment in accordance with this opinion; and, further, that said court determine the amount of the hereinabove mentioned senior mortgage lien debt of the bank, and state same in said judgment.

CURETON, C. J.

Judgment of the Court of Civil Appeals is affirmed, with instructions, as recommended by the Commission of Appeals.