## PRICE et al. v. REEVES et al.

### No. 13302.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 24, 1936.

Rehearing Denied March 13, 1936.

Clark & Clark, of Fort Worth, for plaintiffs in error.

George Burgess, of Dallas, and Rufus S. Garrett and Samuels, Foster, Brown & McGee, all of Fort Worth, for defendants in error.

MARTIN, Justice.

This case comes to this court by writ of error, and the statement of the case is made after a careful reading of the statement of facts and the transcript.

Dudley Price died in the year 1926 and by will left to his two nephews, R. J. Price and C. D. Price, two tracts of land near the town of Arlington, one tract containing 288 acres and the other 50 acres. There was a residence on the 50-acre tract, but none on the 288-acre tract. The brothers took possession of the land and farmed it to crops of wheat and oats. C. D. Price was a married man; R. J. Price was single. They moved into the residence on the 50-acre tract, which was 1¾ miles from the 288-acre tract. This farming adventure proving somewhat unsuccessful, they found it necessary in December, 1931, to borrow some money to carry on their operations and sought a loan, through certain agencies. Their efforts culminated in an arrangement by which Mr. G. W. Birchfield agreed to advance $2,000 upon part of the land. The papers were drawn up and executed in the office of Mr. Jack Rattikin, who seemed to have acted in the capacity of a title insurance agent in the matter and also as notary public. Partition deeds were executed by the brothers Price, C. D. taking the north half of the 288-acre tract and R. J. the south half. But in the deed from C. D. to R. J. of the south half, a consideration of $10 and a vendor's lien note for $2,000 was expressed, and such note, with the vendor's lien, was sold to Birchfield and C. D. transferred the lien to him and received from Birchfield the $2,000. At the same time R. J. also executed a deed of trust in favor of Birchfield to secure the note for $2,000, which was executed by both of the brothers, payable two years after date with interest, semiannually on June 15th and December 15th at 8 per cent. The brothers Price took the $2,000 and divided it between them and spent most of it in an effort to make a crop the following year. They failed to pay the interest due June 15, 1932, and again failed to pay the interest due December 15, 1932, so on December 31st Birchfield requested his trustee, one Johnson, to foreclose the deed of trust. Johnson, declining to act, resigned as trustee and one Jack Haight was appointed as a substitute trustee. He advertised and sold the property on or about February 7, 1933. Birchfield became the purchaser on a bid of $500 at this sale. Subsequently he sold it to Lawrence and wife for $2,800 and they in turn sold it to M. G. Reeves and wife for $3,800. In the meanwhile C. D. Price had rented a portion of the land to one Hart, who appears to have been in possession until after harvest in 1933, and was, as we understand the record, in possession at the time of the foreclosure and the two subsequent sales of the 144-acre tract here involved.

C. D. Price and wife, Mamie Price, and R. J. Price and wife, Ruth Price, he having married after the execution of the note above mentioned, became plaintiffs in the trial court, and Geo. W. Birchfield, W. F. Lawrence and wife, Pearl Lawrence, and M. G. Reeves and wife, Willie Hazel Reeves, became defendants, and they will be referred to in this opinion as such. Plaintiffs pleaded in the trial court that the land in question was a part of their homestead and that the deed to R. J. Price was a simulated transaction and was in fact an attempt to evade the constitutional provision (article 16, § 50) prohibiting encumbrance of the homestead, which fact was known to the defendant Birchfield at the

time the loan was made; that no demand was ever made on the plaintiffs for the payment of the interest due and no notice was ever given them that the holder of the note exercised his option and declared the entire indebtedness due; that substitute trustee was without authority to act for the reason that the deed of trust provided that in the event the trustee failed for any reason to act within ten days after such request the holder of said note may appoint in writing a substitute trustee, and that said defendant Birchfield did not wait ten days after said request on said trustee, but attempted immediately to appoint a substitute trustee; that the sale by the substitute was grossly inadequate in that said sale was made for $500, when said land was worth from $3,500 to $4,000. They further offered to apply the $2,400 which had been approved by the Federal Land Bank in payment of said note. The plaintiffs offered evidence in support of the above-mentioned allegations in their pleadings. The defendants pleaded general demurrers, exceptions, and pleas of innocent purchasers, and the defendants Reeves and Lawrence pleaded over against their grantors on their warranty. When the plaintiffs rested, all of the defendants moved for an instructed verdict, and same was granted and judgment was rendered in favor of the defendants and against the plaintiffs, from which judgment this appeal is taken. Judgment was entered October 2, 1934. Motion for new trial was filed October 8, 1934, and was overruled November 21, 1934, and plaintiffs excepted and gave notice of appeal. Petition for writ of error was filed March 30, 1935, together with a writ of error bond, and citation in error was issued and served on the defendants on the 17th day of April, 1935. Statement of facts was filed in the trial court on May 24, 1935, and same, together with the transcript, was filed in this court on May 24, 1935, and the case is now properly before this court for review and correction.

For convenience we will designate the parties "plaintiffs" and "defendants" as in the trial court.

Defendants object to the consideration of plaintiffs' brief, because, as they allege, it contains no assignments of error upon which their propositions are predicated. The objection is overruled, as we find on pages 32 and 33 of plaintiffs' brief a complete copy of the errors assigned in the motion for a new trial as contained in the transcript.

The first three assignments are in effect that the evidence discloses that the property was the homestead of the Prices at the time of the loan made by Birchfield; that the transfer by C. D. Price and wife to R. J. Price was a simulated sale made for the only purpose of securing a loan on the land, contrary to the provisions of the Constitution, and that it was therefore error to instruct the jury against this contention and the evidence in support thereof. It is true that the Prices, R. J. and C. D., and Mrs. C. D. Price all testified that they were all using and cultivating this land as a homestead, while actually living on the 50-acre tract 1¾ miles distant from the land. They each testified that they did not understand the nature of the documents they signed in Rattikin's office; they only understood that such documents were necessary to get the loan of $2,000 from Birchfield. They also testified that they continued the joint use of the property, as before, after they secured the loan. Birchfield testified that he knew nothing of the homestead character of the property, was only interested in getting the title insured by the Title Insurance Company, and did not discuss the use and occupancy of it by the Prices at any time with either of them. No contention is made that either of the Prices ever lived on the land involved in the lawsuit, but all agree that the house occupied by them was on the 50-acre tract, 1¾ miles away. So, if either or both of the brothers had any homestead rights in the property, it was by reason of the fact that they were cultivating it jointly and using its products for their joint support. Neither of them testified to any intention to ever live on this property, and there was no evidence of any preparation by either of them to do so. R. J. Price, being a single man at the time, could, of course, have no homestead rights in either the north or south division of the 288 acres, and C. D. Price and wife, by deeding the south half to R. J. Price and accepting his deed to the north half, abandoned their homestead rights, if any they had in the south half, and afterwards confirmed this action when they sold and deeded the north half to Mr. McCamey, as the record shows. Under this state of facts, we do not believe that the land in controversy was impressed with the homestead character at the time of the transaction between the Prices and Birchfield, according to the testimony of plaintiffs themselves. These assignments of error are overruled.

The next assignment of error complains of the action of the trial court on the ground that no personal demand was made on the plaintiffs or either of them to pay the past-due interest and no notice was given them of the purpose of Birchfield to declare the note due and that the court erred in not holding the sale by the substitute trustee void and refusing to set aside and cancel said sale.

By their pleading, plaintiffs claimed that no notice of the trustee's sale was given, but there is an entire absence of proof of this allegation. The Prices testified that they knew nothing about it until after the sale, it is true, but we apprehend that all the formalities required by law might have been observed and yet these parties not know, or remember, what was done. They were making the attack on the sale, and theirs was the burden of proof to show the particular irregularities pleaded by them. This they failed to do. The defendants, by counter proposition call our attention to another very important omission on the part of the plaintiffs which may have influenced the trial court in taking the action he did. This was the failure of the plaintiffs to tender back the $2,000 borrowed when asking the cancellation of the sale under the deed of trust. In other words, they invoke the doctrine that "he who asks for equity must do equity." The point seems to be well taken, and we do not think it is met by the proposition put forth in the pleadings to turn over to the defendants the evidence of approval of a loan of $2,400 on the property by the Federal Land Bank. Such a tender, if accepted, would not restore the status quo as it existed between the parties before the negotiations were entered into. 29 Tex.Jur. 881 and cases there cited; Majors v. Strickland (Tex.Civ.App.) 6 S.W.(2d) 133, 135.

It is strenuously insisted by plaintiffs that the evidence in the case shows that the land was homestead property and that as it remained in possession of plaintiffs or their renter until after it was bought by Reeves, that therefore Reeves could not be an innocent purchaser of the land as the possession of the tenant put him upon notice of an outstanding hostile claim. However this may be, both Reeves and his vendor, Lawrence, held under and in privity with Birchfield and had all the rights of Birchfield in regard to tender, etc.

We have carefully considered all assignments, whether herein discussed or not, and have carefully read the entire statement of facts and the transcript, as well as the able and exhaustive briefs of the parties, and have reached the conclusion that the plaintiffs below failed to make out a case and that the trial court did not err in instructing a verdict for defendants.

The judgment is therefore affirmed.