1030

**RANDOLPH et al. v. CITIZENS NAT. BANK OF LUBBOCK et al.**

No. 5138.

Court of Civil Appeals of Texas. Amarillo.
May 27, 1940.

Rehearing Denied July 1, 1940.

G. E. Lockhart and W. R. Porter, both of Lubbock, and Carl E. Ratliff, of Levelland, for appellants.

E. L. Klett, of Lubbock, Weldon F. Johnson, of Levelland, and H. E. Geiger, of Tulsa, Okl., for appellees.

Thomas B. Greenwood, of Austin, J. A. Amis, Jr., of Emory, Rogers & Kilgore, of Wichita Falls, D. H. Bradley, George S. Berry, and W. D. Wilson, all of Lubbock, Allison & Gordon, of Levelland, and Wm. K. Hall and Eugene T. Adair, both of Fort Worth, amici curiæ.

STOKES, Justice.

This case was submitted in this court on March 25, 1940, and on April 1st thereafter we handed down an opinion in which we reversed and remanded the case to the lower court, with certain instructions. Appellees have filed a motion for rehearing and a further consideration of the entire record and the authorities cited has convinced us that we erred in reversing the case. The original opinion is, therefore, withdrawn and the following opinion substituted therefor.

This is a suit in trespass to try title filed by appellants, Katie Randolph and her husband, W. M. Randolph, against appellees, the Citizens National Bank of Lubbock, Sam C. Arnett, George E. Benson, the Devonian Oil Company, and another defendant not necessary to mention. The record reveals that on the 9th of January, 1928, appellants purchased from one Bob Slaughter a tract of 163 acres of land located in Hockley County and as part of the purchase price they executed a vendor's lien note in the sum of $982.20, due ten years after date, bearing interest at the rate of 7% per annum, the interest payable annually. On the 7th of February, 1928, appellants executed and delivered to R. L. Slaughter, Jr., a deed of trust in which they conveyed the land to him as trustee, the deed of trust being given as additional security for the vendor's lien note. It contained a provision that upon default in the payment of any installment of the interest the holder of the note should have the right to declare the entire indebtedness due and cause the land to be sold by the trustee under the power of sale in the deed of trust. On the 28th of October, 1933, some five or six years interest being due and unpaid, Bob Slaughter, the payee, called upon R. L. Slaughter, Jr., the trustee, to execute the trust. Upon his refusal to do so, Bob Slaughter appointed A. J. Richards as substitute trustee and demanded that he advertise and sell the land and apply the proceeds to the payment of the note and interest as provided in the deed of trust. Richards posted notices and advertised the sale to take place on the 5th of December, 1933, at which time the land was sold to Bob Slaughter for a recited consideration of $1,500.42.

On the 27th of March, 1934, Bob Slaughter, for a recited consideration of $10, executed a deed conveying the land to appellee, Citizens National Bank, and on the 1st of March, 1937, the bank executed and delivered to the Devonian Oil Company an oil and gas lease thereon. Thereafter, on December 8, 1937, the Bank conveyed the land to appellees, Sam C. Arnett and George E. Benson, for a cash consideration of $3,000.

Appellants alleged that the foreclosure sale purported to have been made by A. J. Richards on the 5th of December, 1933, was void and did not divest them of the title because, first, the substitute trustee was requested to execute the trust by Bob Slaughter and that he was not at that time the holder of the note secured thereby but had delivered the same to the Citizens National Bank and the latter had not requested the substitute trustee to sell the land. Secondly, that the land was not sold by A. J. Richards, the substitute trustee, but that the sale was made by one Douglas Witherspoon, who had no authority to make the sale. They alleged, therefore, that the trustee's deed executed by Richards in which he conveyed the land to Bob Slaughter was void and the deed from Slaughter to the Bank, the oil and gas lease from the Bank to the Devonian Oil Company, and the deed from the Bank to Arnett and Benson were ineffective and did not divest appellants of their title to the land.

Appellees answered (a) by a plea of not guilty, (b) general denial, (c) that they were innocent purchasers for value and without notice of appellants' alleged claims, (d) the three year statute of limitation, (e) they pleaded the provisions of the deed of trust in reference to statements and declarations that may be made by the trustee concerning the sale, (f) facts which they relied upon as estoppel, and (g) the four year statute of limitation against the cancellation of the trustee's deed.

The case was submitted to a jury upon special issues and upon their verdict and

answers thereto the court rendered judgment in favor of appellees. Appellants filed a motion for a new trial which was overruled and they have perfected an appeal.

The case is presented here upon ten separate propositions of law supported by twenty-six assignments of error, but in the view we take of the case it will not be necessary to discuss all of them. The questions which must control our disposition of the case are, first, whether or not the sale made under the deed of trust had the effect of divesting appellants of their title; secondly, whether or not, under the circumstances revealed by the record, appellees are entitled to hold the land as innocent purchasers for value, and, thirdly, whether or not appellants are estopped by recitals in the deed of trust and the trustee's deed.

The deed of trust executed by appellants was in the ordinary form of trust deeds and contained a provision that, upon default in the payment of the note in the sum of $982.20, together with the interest as it became due, the trustee, R. L. Slaughter, Jr., was authorized and empowered, at the request of the payee or any holder of the note, to sell the property to the highest bidder for cash after having given notice of such sale by posting written or printed notices at three public places in Hockley County, and provision was made for the trustee to execute a trustee's deed conveying the land to the purchaser. It was further provided in the deed of trust that in the event the trustee named therein should remove from the county or, for any reason, was unable to perform the trust imposed upon him therein, or if he refused to do so, the holder of the note should have the right to appoint a substitute trustee who should succeed to all of the powers and authority, and be charged with the same duties, as were granted to, or imposed upon, the named trustee. The record shows that R. L. Slaughter, Jr., the trustee named in the deed of trust, refused to discharge the trust and that Bob Slaughter duly appointed A. J. Richards as substitute trustee, who posted notices and advertised the sale of the land to take place at the courthouse door of the county on the 5th of December, 1933.

In answer to special issue No. 7 the jury found that A. J. Richards, the substitute trustee, did not make the sale. The testimony shows, in this regard, that Richards was present when the auction sale was opened but, before it had proceeded to any material extent, he left the place where the sale was being conducted at the courthouse door and did not return during the time it was in progress. The evidence is undisputed that Douglas Witherspoon made the sale. He "cried off" the property and received the bids therefor. He also declared the bid accepted and announced that the property was sold to Bob Slaughter. The fact is established by the evidence and the finding of the jury, therefore, that the sale was not made by any person who had authority to make it but was made by an agent appointed by the substitute trustee who did not possess authority from any one to appoint such an agent.

It is settled law in this state that the office of such a trustee involves personal confidence and his duties and powers as such cannot be delegated by him to another unless such authority is expressly granted in the deed of trust. The details concerning his conduct that are set forth in the instrument by which he is appointed must be strictly followed. The duties conferred upon a trustee under a power of sale do not permit him to absent himself while the sale is being conducted. His duty personally to execute the power granted to him in the deed of trust is not directory but strictly mandatory in character and cannot be exercised under any circumstances other than those prescribed in the instrument by which he receives his appointment. Fuller v. O'Neal, 69 Tex. 349, 6 S.W. 181, 5 Am.St.Rep. 59; Estelle v. Hart, Tex.Com.App., 55 S.W.2d 510. It must be concluded, therefore, that the sale of appellants' land, made, as it was, by one who possessed no authority to make it, was void in so far as appellants, the purchaser at such sale, and any subsequent purchasers with notice are concerned.

The deed of trust executed by appellants and under which the sale was made contained the following provision: "And it is further specially agreed by the parties hereunto that in any deed or deeds given by any Trustee or substitute duly appointed hereunder, any and all statements of facts or other recitals therein made as to the non payment of the money secured, or as to the request to sell, the time, place, terms of sale, and property to be sold having been duly published, or as to any other act or thing having been duly done by any Trustee, or substitute, shall be taken by any and all courts of law and equity as prima

facie evidence that said statements or recitals do state facts, and are without further question to be accepted."

By substitute trustee's deed, bearing date the 5th of December, 1933, the day the sale was made, A. J. Richards conveyed the land to Bob Slaughter, the purchaser at the sale, for a recited consideration of $1,500.42, the amount bid by him at the sale. In the substitute trustee's deed Richards made the following statement: "Whereas, I did, in accordance with said notices, on the first Tuesday in December, 1933, being the 5th day of the month, between the hours of 10:00 A. M. and 4:00 o'clock P. M. on said date, offer said property for sale at public auction to the highest bidder for cash at the courthouse door in Hockley County, in the town of Levelland, at which sale the property was struck off to Bob Slaughter for the sum of $1500.42."

On the 27th of March, 1934, almost a year after he purchased the land at the foreclosure sale, Bob Slaughter conveyed it to the Citizens National Bank for a recited consideration of $10. The record shows, however, that sometime after receiving the deed the Bank cancelled a considerable amount of indebtedness owing to it by Slaughter. On the 1st of March, 1937, more than three years after the foreclosure sale the Bank executed and delivered to appellee, Devonian Oil Company, an oil and gas lease, covering the entire tract and reciting a consideration of $10 cash and certain covenants and agreements to be kept and performed by the lessee. On December 8, 1937, more than four years after the foreclosure sale, appellees, Sam C. Arnett and George E. Benson, purchased the land from the Bank, receiving from it a general warranty deed reciting a cash consideration of $3,000. The jury found that the Citizens National Bank, Sam C. Arnett, George E. Benson and the Devonian Oil Company all paid valuable considerations for the land when it was purchased by them respectively before they received any notice that appellants were claiming it and that they purchased the land under the belief that their respective immediate predecessors had good title thereto in so far as appellants were concerned. These findings have ample support in the testimony and are sufficient to support the contentions of appellees that they were innocent purchasers for value without notice of the infirmities asserted by appellants. Appellees were,

therefore, entitled to the judgment rendered in their favor by the court below unless they are defeated by the contentions of appellants that their status as innocent purchasers is destroyed by the failure of the substitute trustee to observe the formalities incorporated in the deed of trust, the observance of which is required by the law, in conducting the foreclosure sale under the deed of trust. Their contention is that the sale to Bob Slaughter under the foreclosure was void because the same was not made by the substitute trustee in person but was made by Douglas Witherspoon, a stranger and agent appointed by the substitute trustee. They contend, further, that the sale being absolutely void for this reason, none of the appellees are innocent purchasers and the court should have sustained their motion for a judgment based upon the findings of the jury to that effect. As authority for this contention appellants cite us to the case of Bowman v. Oakley, Tex.Civ.App., 212 S. W. 549, 551, and other cases of like import. In the Oakley case it was said: "While [when] it has been held that a purchaser in good faith and for value, and without actual notice, may rely upon recitals in the trustee's deed when such recitals are authorized by the terms of the trust deed under which the trustee acts, yet it must be held, we think, that before the semblance of absolute verity can be given to such ex parte declaration it should clearly appear that the party, whose right it is sought to thereby destroy, authorized the trustee to make the statement or recital."

In the deed of trust involved in that case it was agreed by the parties that in any deed given by the trustee, any and all statements of facts or other recitals therein as to the non-payment of the money secured, the time, place, terms of sale and property to be sold having been duly published, "or as to any other act or thing having been duly done by any trustee" shall be taken by any and all courts of law and equity as prima facie evidence that such recitals of fact did state facts and were, without question, to be accepted. The court observed that the trustee was authorized to recite the non-payment of the money secured and the performance of acts and duties of the trustee but noted the absence of authority in the deed of trust for the trustee to make any statements or representations of a request hav-

ing been made by the beneficiary that he make the sale. The jury found in that case that the trustee was not requested by the beneficiary to make the sale and the effect of the holding is that, no such request having actually been made by the holder of the indebtedness, and the grantor in the deed of trust not having authorized the trustee to make the statement in his deed that such request had been made, neither the purchaser at the sale nor those holding under him could claim the rights of innocent purchasers for value. In the instant case appellants, in effect, authorized the substitute trustee to represent in his deed of conveyance to the purchaser that he, in person, had conducted the sale. This authority was contained in their agreement that in any deed given by him, any statements of facts or other recitals therein as to any act or thing having been duly done by the trustee should be taken as prima facie evidence that they were true and should be accepted without further question. In his deed the trustee represented that he, in accordance with the notices, etc., offered the property for sale at public auction. The deed was executed by the duly appointed substitute trustee and the record reveals nothing in the chain of title held by appellees or otherwise that would constitute notice or put them upon inquiry as to the falsity of the representation. It will be seen, therefore, that the deed of trust in the instant case conferred authority upon the trustee to make representations, the absence of which in the deed of trust involved in the Oakley case constituted the basis for the holding made therein by the court. Indeed, it is intimated in the Oakley case that, if the trustee had been authorized by the grantors in the deed of trust to make the representation that the holder of the indebtedness had requested him to make the sale, they would have been bound by the representation to that effect made by the trustee in the deed executed by him although such request had not, in fact, been made.

In view of the authority expressly conferred upon the trustee by appellants when they executed the deed of trust and the recitals made by him in detailing his acts in connection with the sale and the manner in which the same was conducted, and the further fact that the record fails to disclose anything which could be held to constitute notice to appellees or put them upon inquiry as to the falsity of the representa-

tions made by the trustee in that regard, and the further fact that they paid valuable considerations for the land when they purchased the same, it must be held that appellees are protected in their respective purchases under the doctrine of innocent purchasers. The jury so found and the finding has ample support in the testimony. This conclusion is impelled, not because of the actual power in the trustee to convey the land, as he attempted to do by the trustee's deed, but by the beneficent provisions of the doctrine of equity which shields one who purchases land under such conditions and imposes the loss upon him who has been generous in the extension to others of authority to bind him in such situations. Burnham v. Hardy Oil Co., 108 Tex. 555, 195 S.W. 1139; Schneider v. Sellers, 98 Tex. 380, 84 S.W. 417; Blair v. Hennessy, Tex.Civ.App., 138 S.W. 1076.

Moreover, the trustee's deed was in all respects sufficient to place in Bob Slaughter the apparent legal title to the land and it has long been the law in this state that one who purchases land from another who has the apparent title, without notice of any infirmities therein, and pays a valuable consideration therefor, is protected under the equitable doctrine of innocent purchaser. Mast v. Tibbles, 60 Tex. 301.

Appellants make the further contention here that the sale under the deed of trust was void in its inception and throughout; that it conveyed no title to Slaughter, and none that could be conveyed by him to the Bank under any circumstances because, they say, the Bank was the holder of the indebtedness and the request of the trustee to make the sale was not made by the Bank, but by Slaughter. The deed of trust provides that the trustee was authorized to make the sale when requested so to do by the holder of the indebtedness. The record shows that Bob Slaughter was the owner of the note but that he had pledged the same to the Bank as collateral security to his indebtedness to the Bank.

As a general rule the pledgee of commercial paper holds it as a trustee for the pledgor and, as such trustee, it is his duty to collect it when it becomes due and to take such steps as may be necessary to enforce collection. It does not follow, however, that the pledgor is not permitted to collect the indebtedness, enforce the security and file suit if necessary under

an agreement with the pledgee which entitles him to do so. When the debt is thus collected by the pledgor the debtor is relieved of further liability thereon and if suit is filed by the pledgor under such circumstances, the pledgee is barred from any action thereon and the debtor is fully protected. The record shows that Slaughter had authority from the Bank to collect the debt and pay the proceeds upon his indebtedness to the Bank. The jury found that the Bank was the holder of the note but, in view of the undisputed testimony that it was held by the Bank merely as collateral to Slaughter's indebtedness, the finding must be construed to mean nothing more than that. Liner v. J. B. Watkins L. M. Co., 29 Tex.Civ.App. 187, 68 S.W. 311.

In addition to what we have said concerning the status of appellees as innocent purchasers it may be said that appellants are estopped from contending that no title passed to appellees on account of the unauthorized manner in which the trustee's sale was conducted because of the liberal authority conferred by them upon the trustee to make binding representations as to the manner in which he sold the land. Having given to him by the provisions of the deed of trust authority to delineate his actions in enforcing the trust and assured subsequent purchasers that any statement made by him in reference to his acts and conduct in enforcing the trust could be used by them as prima facie evidence that they were true and accepted without further question, and the statements and representations of the trustee in reference thereto being sufficient to cover every detail demanded by the deed of trust, appellants cannot now be heard to say that the statements of the trustee in his deed are untrue and thereby deprive innocent purchasers of the title which, through the assurance of appellants, they had the right to believe they were acquiring by the payment of valuable considerations.

A number of other questions are presented by the briefs but they could be material only in the event appellees were not protected as innocent purchasers of the land, and we do not deem it necessary to discuss them. If they hold good title as innocent purchasers such questions as rescission, the three and four year statutes of limitation and other questions raised by the brief are immaterial and not necessary to a disposition of the appeal.

What we have said indicates that, in our opinion, the judgment rendered by the trial court was the proper one. The motion of appellees for rehearing will be granted and the judgment of the court below affirmed.