Felipe **BONILLA**, Jr., Appellant,

v.

**L.W. ROBERSON, trustee, et al., Appellees.**

No. 13–94–119–CV.

Court of Appeals of Texas, Corpus Christi.

Jan. 11, 1996.

Rehearing Overruled March 21, 1996.

Richard K. Houtchens, Corpus Christi, for appellant.

Fred D. Dreiling, Corpus Christi, for appellees.

Before SEERDEN, C.J., and YAÑEZ and CHAVEZ, JJ.

## OPINION

CHAVEZ, Justice.

This case involves a default under a mortgage agreement by appellant/mortgagor, Felipe Bonilla, and the validity of resulting foreclosure proceedings instituted by appellee/mortgagee, Richard Roberson. The trial court awarded judgment in favor of appellee in the amount of $18,706.11. Appellant challenges the judgment by three points of error. In addition, appellee counterclaims by one point of error. We reverse the judgment of the trial court and remand for further proceedings.

On September 9, 1980, Roberson sold property consisting of two lots to appellant. Lot 4, Block 3 contained a housing structure consisting of four rental units. Lot 3, Block 3 was vacant. Appellant executed and delivered to Roberson two real estate notes for the lots in the total principal sum of $60,-500.00—$51,500.00 for Lot 4, Block 3 and $9,000.00 for Lot 3, Block 3. The two notes were secured by two separate deeds of trust. In addition, Roberson executed and delivered two warranty deeds to appellant, one for each lot.

Both deeds of trust imposed a number of obligations and responsibilities under the terms of the mortgage agreements. For example, appellant promised to pay monthly mortgage payments, ad valorem taxes, and to maintain insurance coverage. Appellant was also obligated to maintain all improvements in good and tenantable condition, and not to do or suffer any act which lessened the value of the property. Furthermore, upon appellant's default and appellee's request, the deeds of trust provided the trustee with the power to sell the lots in a prescribed manner to the highest bidder for cash.

On November 1, 1984, appellant failed to make the monthly mortgage payment, and subsequently, all mortgage payments thereafter. Appellant also breached the terms of the mortgage contract by failing to pay ad valorem property taxes for the years 1982 through 1984 and failing to maintain insurance coverage on the property. As a result of appellant's breach, Roberson initiated two non-judicial foreclosure sales on March 5, 1985, to foreclose each deed. At the proceeding, Roberson submitted a bid and purchased both lots for $80,000.00, in total—$60,000.00 for Lot 4, Block 3, and $20,000.00 for Lot 3, Block 3.

After the sale, Roberson alleged he entered the property whereby he discovered extensive damage and destruction to the housing structure on Lot 4, Block 3, thereby reducing the value of the lot and rendering the rental units untenantable.[1] Roberson did not claim that there was any damage to the vacant lot.

On March 7, 1985, the substitute trustee, appellee's father, executed two deeds in which he acknowledged to the notary that he had received consideration for the deeds. And on March 8, 1985, the substitute trustee

---

1. At trial, Roberson testified that water heaters, toilets, bathtubs, gas stoves, and refrigerators were missing from the rental units. He also testified that there was a large hole in one of the interior walls.

filed the deeds in the county clerk's office in Nueces County, Texas.

The record does not show the amounts owing on March 5, 1985, the date of the first foreclosure. The amount owing, however, on the date of the second foreclosure, June 4, 1985, was $60,369.75. On May 9, 1985, appellant instituted this suit to request that amounts in excess of lawful charges[2] owed to Roberson from the first foreclosure sales be remitted to appellant.

Although the first foreclosure sales complied with all statutory requirements, Roberson and Roberson's father, acting in the capacity of substitute trustee, purported to rescind the first sales and filed cancellation deeds on May 14, 1985, four days after appellant filed this suit. The reason set forth on each cancellation deed was that "said property had been substantially damaged, prior to the sale, without [appellee's] knowledge" and that appellee had refused to pay for the property upon discovering that it had been wasted by the mortgagor.

Appellees then posted notice for the second foreclosure sales which were set for June 4, 1985. In response, appellant requested a temporary injunction to enjoin the second foreclosure sales on grounds that the first foreclosure sales were unlawfully cancelled. By docket entry on June 3, 1985, the trial court denied appellant's application for injunction, and allowed the second foreclosure sales to proceed as scheduled. At the second non-judicial foreclosure sales, appellee submitted successful bids for the deeds totaling $42,500.00 for both lots—$35,000.00 for Lot 4, Block 3 and $7,500.00 for Lot 3, Block 3.

After a non-jury trial, the court upheld the second foreclosures and found that the note principal on both lots, accrued interest, unpaid taxes, insurance expenses, attorney's fees, and trustee's fees owed on the property equalled $61,206.11, leaving a deficient amount of $18,706.11. Although Roberson counter-claimed that he was due $69,700.00 in lost rental income in addition to the deficiency, the trial court awarded Roberson $18,706.11 for the "foreclosure deficiency

and/or lost rental income." Roberson was also awarded pre-judgment interest, post-judgment interest, as well as attorney's fees.

■ By appellant's first point of error, he alleges the trial court erred in denying his application for temporary injunction. Appellant maintains that the first foreclosure sales were valid and the cancellation deeds were invalid. Appellant's second point of error contends the trial court erred in denying appellant's request for judgment against appellee/mortgagee for the amount bid at the first foreclosure sales, less interest up to the date of the first sale, principal due on the two notes, and reasonable trustee's and attorney's fees. Finally, by appellant's third point of error, he alleges that the trial court erred in granting appellee/mortgagee judgment for damages on the second foreclosure sales.

By cross point, appellee claims the trial court erred in failing to award a judgment against appellant for $69,700.00 in lost rental income.

■ Addressing appellant's first point of error regarding the temporary injunction, under the mootness doctrine, appellate courts may only determine cases in which an actual controversy exists. *Federal Deposit Ins. Corp. v. Nueces County*, 886 S.W.2d 766, 767 (Tex.1994). Thus, when a judgment cannot have a practical effect on an existing controversy, the case is moot. *Brownsville Indep. Sch. Dist. Bd. of Trustees v. Brownsville Herald*, 831 S.W.2d 537, 539 (Tex. App.—Corpus Christi 1992, no writ). "Courts are created not for purposes of deciding abstract or academic questions of law or to render advisory opinions, but solely for judicial determination of *presently existing* disputes between parties in which effective judgment can be rendered." *Id.* at 538–39.

In *Isuani v. Manske–Sheffield Radiology Group, P.A.*, 802 S.W.2d 235 (Tex.1991), the Texas Supreme Court held that while on appeal of an order granting or denying a temporary injunction a trial court renders final judgment, the case on appeal becomes

---

**2.** Lawful charges include the amount of principal on the loans, interest up to the day of sale, unpaid taxes, unpaid insurance premiums, reasonable fees to reimburse the trustee, and reasonable attorney's fees, if any.

moot. *Id.* at 236. In the instant case, the trial court denied appellant's application for temporary injunction, and subsequently rendered final judgment on the merits before appellant even began the appeal process. Applying the standard of *Isuani*, we accordingly dismiss appellant's first point of error as moot.

■ We next review appellant's second and third points of error. Appellant claims the trial court erred in 1) denying his request for judgment in the amount of surplus resulting from the first foreclosure sales, and 2) granting appellee judgment for damages on the second foreclosures. Appellant claims that because the first foreclosure sales were valid, appellee was not entitled to rescind the sales and issue cancellation deeds. The issue on appeal is whether appellee and the trustee validly canceled the first foreclosure sales.

By its findings and conclusions, the trial court completely ignored the validity of the first foreclosures, a material issue of the case, and only discussed the second foreclosures. Because appellant did not ask for additional findings, he cannot challenge the lack of findings on appeal. *Goldston Corp. v. Hernandez*, 714 S.W.2d 350, 352 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). When findings of facts are filed by the trial court, they shall form the basis of the judgment upon all grounds of recovery. Tex.R.Civ.P. 299. But, when one or more elements of the recovery have been found by the trial court, omitted unrequested elements, *when supported by evidence*, will be presumed in support of the judgment. *Id.* A thorough review of the statement of facts discloses no evidence to support the trial court's presumed invalidation of the first foreclosure sales.

■ A foreclosure sale may be instituted either by a judgment of the court establishing the debt and fixing the lien, or by a valid exercise of a power contained in a deed of trust. *Taylor v. San Antonio Joint Stock Land Bank*, 101 S.W.2d 868, 872 (Tex.Civ. App.—San Antonio 1936), *rev'd on other grounds*, 129 Tex. 335, 105 S.W.2d 650 (1937). The power of the trustee to sell the deed for the parties is derived wholly from the trust instrument. *Winters v. Slover*, 151 Tex. 485,

251 S.W.2d 726, 728 (1952). Because a power of sale under a deed of trust is a harsh method of collecting debts and of disposing of another's property, it can only be exercised by strict compliance with the note and conditions of sale. *Crow v. Heath*, 516 S.W.2d 225, 228 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.). Thus, a trustee must strictly pursue the terms of the instrument, the provisions of law relative to such a sale, and the details prescribed as to the manner of the sale. *See Durkay v. Madco Oil Co.*, 862 S.W.2d 14, 17 (Tex.App.—Corpus Christi 1993, writ denied); *Randolph v. Citizens Nat'l Bank*, 141 S.W.2d 1030, 1032 (Tex.Civ. App.—Amarillo 1940, writ dism'd judgm't cor.).

■ When exercising a power contained in a deed of trust, the trustee becomes a special agent for both parties, and he must act with absolute impartiality and with fairness to all concerned in order to achieve the objective of the trust. *See Hammonds v. Holmes*, 559 S.W.2d 345, 347 (Tex.1977); *First Federal Sav. & Loan Ass'n v. Sharp*, 359 S.W.2d 902, 904 (Tex.1962).

■ In addition, a purchaser at a foreclosure sale obtains that title which the trustee has authority to convey. *Durkay*, 862 S.W.2d at 17. Once a foreclosure sale is complete, the sale and the trustee's deed have the effect of divesting the title of the mortgagor and vesting it in the purchaser. *See Puntney v. Moseley*, 237 S.W. 1116, 1118 (Tex.Civ.App.—Amarillo 1922, writ dism'd).

■ To contest foreclosure of a deed of trust, a party must, at the time of foreclosure, either be a mortgagor under the deed of trust or be in privity with the mortgagor, or have an ownership interest in property affected by the foreclosure. *Goswami v. Metropolitan Sav. and Loan Ass'n*, 751 S.W.2d 487, 489 (Tex.1988); *Long v. NCNB—Tex. Nat'l Bank*, 882 S.W.2d 861, 867 (Tex.App.—Corpus Christi 1994, no writ); *Ursic v. NBC Bank South Tex., N.A.*, 827 S.W.2d 334, 336 (Tex.App.—Corpus Christi 1991, writ denied).

■ When a party with a property interest wishes to challenge a sale's validity,

the proper action is to bring a cause of action to set aside the sale and cancel the trustee's deed. *See Durkay,* 862 S.W.2d at 17; *Waters v. Brooks,* 325 S.W.2d 853, 856 (Tex.Civ. App.—El Paso 1959, no writ) (invalidity of sale of property by substitute trustee must be pleaded and proved on trial). It is incumbent on the party attacking the sale to plead and prove any irregularities rendering the sale invalid. *Price v. Reeves,* 91 S.W.2d 862, 865 (Tex.Civ.App.—Fort Worth 1936, writ dism'd). However, in this case, instead of bringing a cause of action to challenge the sale, the mortgagee instructed the trustee to rescind and cancel the deeds of the completed sale.

 The trustee under a deed of trust has limited authority to act as the mortgagor's agent only in the *sale* of the property. *See Puntney,* 237 S.W. at 1118. Although it is in the interest of both the mortgagor and the mortgagee to sell the property for the highest price available, the trustee is not responsible to obtain a good deal for the purchaser or to protect the purchaser's interests, even if that purchaser also happens to be the mortgagee. The trustee is only responsible to the mortgagee in the mortgagee's capacity as a creditor interested in satisfying the debt out of the proceeds of the sale; he is not responsible to the mortgagee in the capacity as a purchaser seeking to purchase the property for less than its fair value in opposition to the mortgagor's interest.

 Once a sale is complete, there is no further express or implied authority to act as the mortgagor's agent in the cancellation or rescission of a sale. A trustee does not have the power to execute a "Cancellation of Deed" purporting to take back title to the property and resurrect the underlying debt. To imply a power in the trustee to nullify a sale after the sale is complete and the trustee's deed has been executed, delivered, and filed, would be to give the trustee powers never specified or contemplated by the deed of trust.

There must be a certain point in time at which the sale by the trustee may be said to have been completed and his duties and authority come to an end, except to the extent that he may still be a conduit through which the proceeds of that sale pass to the proper parties. Any subsequent action to avoid the sale must be brought by the parties as a cause of action. *See Waters,* 325 S.W.2d at 856.

To justify rescission, appellee refers us to *Ellis v. Michigan Realty Co.,* 138 S.W.2d 880 (Tex.Civ.App.—Galveston 1940, writ ref'd), for the proposition that there is "no rule which prevents a second sale of property under a deed of trust where all prerequisites of said sale have been complied with." *Id.* at 883. However, in *Ellis,* unlike the present case, the court specifically stated that the validity of the second foreclosure sale had not been challenged. Also, no explanation was given as to why the property was sold twice by the substitute trustee. Because the threshold issues in this case are the validity of the second foreclosure sales and the trustee's authority to rescind completed foreclosures, we do not find *Ellis* to be dispositive.

We hold that in the instant case, the trustee had no authority under the trust provisions of the deed to rescind the first foreclosure sales and issue cancellation deeds. In order to recover damages to the property, it was incumbent on appellee to bring an action directly against Bonilla rather than to informally settle the matter with the trustee. Accordingly, we sustain appellant's second and third points of error.

 Since the first foreclosure sales were valid, appellee/mortgagee was entitled to have his bid of $80,000.00 credited against the mortgage debt.[3] *See McClure v. Casa Claire Apartments,* 560 S.W.2d 457, 461 (Tex.Civ.App.—Beaumont 1977, no writ); *Habitat, Inc. v. McKanna,* 523 S.W.2d 787, 790 (Tex.Civ.App.—Eastland 1974, no writ). Had this occurred, a surplus would have

---

**3.** The general rule in Texas permits a noteholder to apply and credit its bid against its note as equivalent to applying cash, since it would be "an idle ceremony" for the trustee to require the noteholder to actually pay its bid, which would be immediately returned by the noteholder. *Thomason v. Pacific Mut. Life Ins. Co.,* 74 S.W.2d 162, 164 (Tex.Civ.App.—El Paso 1934, writ ref'd).

resulted from the first foreclosure sales. Unless otherwise agreed by the parties, the surplus remaining after paying the mortgage debt and the expenses of sale belongs to the mortgagor. *See Pounds v. Jenkins,* 157 S.W.2d 173, 177–78 (Tex.Civ.App.—Texarkana 1941, no writ); *Lewis v. Investors Sav. Ass'n,* 411 S.W.2d 794, 798 (Tex.Civ.App.—Fort Worth 1967, no writ). Thus, the surplus resulting from the first foreclosures should have been remitted to appellant.

 Appellee contends in his cross point that the trial court erred in not awarding him lost rental income in the amount of $69,700.00. However, the deeds of trust provided all the remedies that were available to appellee. A mortgage is governed by the same rules of interpretation which apply to contracts. *Sonny Arnold, Inc. v. Sentry Sav. Ass'n,* 633 S.W.2d 811, 815 (Tex.1982); *Alkas v. United Sav. Ass'n of Tex., Inc.,* 672 S.W.2d 852, 858 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). Thus, the terms of a deed of trust are strictly construed. *Murchison v. Freeman,* 127 S.W.2d 369, 372 (Tex. Civ.App.—El Paso 1939, writ ref'd). The deeds of trust provided that appellee was entitled to recover actual costs and expenses expended as a result of appellant's breach, along with interest at the rate of ten percent per annum. There is no mention of lost rental income as a remedy in the deeds of trust. Thus, appellee is not entitled to any remedies that are not provided for in the mortgage. We overrule appellee's sole cross point.

Accordingly, the judgment of the trial court is REVERSED and REMANDED for a hearing to determine the lawful charges owed to appellee/mortgagee as of the first foreclosure sales, along with the resulting surplus owed to appellant/mortgagor.