ACCEPTED
03-14-00529-CV
3993295
THIRD COURT OF APPEALS
AUSTIN, TEXAS
2/2/2015 10:20:59 PM
JEFFREY D. KYLE
CLERK

## No. 03-14-00529-CV

## In the Court of Appeals
## for the
## Third Court of Appeals District of Texas
## Sitting at Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
2/2/2015 10:20:59 PM
JEFFREY D. KYLE
Clerk

_____

**Jerome J. Isaac and Michelle P. Isaac, Appellants**

**vs.**

**Vendor Resource Management, Inc.,
Mortgage Electronic Registration Systems, Inc., and
Citimortgage, Inc., Appellees**

_____

**Appealed from the 26th District Court
of Williamson County, Texas
The Honorable Billy Ray Stubblefield, Presiding**

_____

**Brief of Appellants,**

**Jerome J. Isaac and Michelle P. Isaac**

_____

Michael Brinkley
State Bar No. 03004300
BRINKLEY LAW PLLC
P. O. Box 820711
Fort Worth, TX 76182-0711
888.511.5854; 817.284.3535
fax 888.511.0946
michael@brinkleypllc.com
Attorney for Appellants

## Certificate of Parties

The following is a complete list of all parties to this action:

(1)      Jerome J. Isaac and Michelle P. Isaac, appellants
123 Dana Drive, Hutto, Texas 78634

(2)      Vendor Resource Management, Inc. ("VRM"), appellee
4100 International Parkway, Suite 1000
Carrollton, Texas 75007

(3)      Mortgage Electronic Registration Systems, Inc. ("MERS"), appellee
1818 Library St., Ste. 300
Reston, Virginia 20190-6280

(4)      Citimortgage, Inc. ("Citi"), appellee
1595 Springhill Road #310
Vienna, Virginia 22182

(5)      Michael Brinkley, attorney for appellants
BRINKLEY LAW PLLC
P. O. Box 820711
Fort Worth, Texas 76182-0711

(6)      John Ellis, attorney for appellees MERS and Citi
HUSCH BLACKWELL LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201

(7)      Christopher Ferguson, attorney for appellee VRM
JACK O'BOYLE & ASSOCIATES
P. O. Box 815369
Dallas, Texas 75381

(8)      Mark Hopkins, attorney for appellee VRM
HOPKINS & WILLIAMS
12117 Bee Caves Road, Suite 260
Austin, Texas 78738

# Subject Index

**Page**

List of Authorities                                          4

Statement of the Case                                        6

Statement Regarding Oral Argument                            6

Points of Error                                              7

Statement of the Facts                                       7

Summary of Argument                                          8

Argument and Authorities

    POINT OF ERROR 1. The trial court erred in granting Summary Judgment to Citimortgage, MERS and VRM because there was sufficient summary judgment evidence to permit the Isaacs to proceed to trial on one or more of their claims.          9

    POINT OF ERROR 2. The trial court erred in granting Summary Judgment to Citimortgage, MERS and VRM, since the substitute substitute trustees putatively appointed by or for Citimortgage were each and all acting, on the face of the summary judgment record, without capacity at all relevant times, and hence all acts taken in furtherance of the invalid trustee sale are void.          22

Conclusion/Prayer                                            25

Certificate of Compliance                                    26

Certificate of Service                                       27

Appendix 1  Judgment                                         28f

Appendix 2  Statutes and Rules                               30ff

# List of Authorities

**Cases**                                                          **Page**

*Biggers v. BAC Home Loans Servicing, LP*, 2011 WL 588059,
      2011 U.S. Dist. LEXIS 13104 (N.. D. Tex. 2011)       13, 17, 21

*Bonilla v. Roberson*, 918 S.W.2d 17, 21 (Tex. App. – Corpus Christi, 1996)   24

*Grotjohn Precise Connexiones International v. Jem Financial, Inc.*,
      12 S.W.3d 859, 865 (Tex.App.–Texarkana 2000)       18

*Hilton v. Texas Inv. Bank, N.A.*, 650 S.W.2d 545, 547
      (Tex.App.– Houston [14th Dist.] 1983, no writ)       18

*Kaltenbach v. Richards*, 464 F.3d 524-529 (5th Cir. 2006)       13

*Kingman Holdings, LLC v. CitiMortgage, Inc.*, No. 4:10-cv-619,
      2011 BL 129902 (E.D. Tex. May 17, 2011)       12

*Kolb v. Texas Employers' Ins. Ass'n,* 585 S.W.2d 870, 873
      (Tex.Civ.App. – Texarkana 1979, writ ref'd n.r.e.)       18

*Martin v. Cadle Co.*, 133 S.W.3d 897, 905; 2004 Tex. App.
      LEXIS 4478 **16-17  (Tex.App. – Dallas 2004)       24

*Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723-724
      (5th Cir. 2013)       21, 23

*Taylor Elec . Services, Inc. v. Armstrong Elec. Supply Co.*,
      167 S.W.3d 522, 531-32 (Tex. App.-Ft. Worth 2005, no pet.)       11, 12

## Statutes and Rules

TEXAS CIV. PRAC. & REM. CODE §12.001 *et seq*       11

TEX. FIN. CODE Chapter 392       13, 20, 21

TEXAS PROPERTY CODE §§24.002 and 24.005       19

TEXAS PROPERTY CODE §51.001(4)       15

**In the Court of Appeals
for the
Third Court of Appeals District of Texas
Sitting at Austin, Texas**

_____

**Jerome J. Isaac and Michelle P. Isaac, Appellants**

**vs.**

**Vendor Resource Management, Inc.,
Mortgage Electronic Registration Systems, Inc., and
Citimortgage, Inc., Appellees**

_____

**Appealed from the 26th District Court
of Williamson County, Texas
The Honorable Billy Ray Stubblefield, Presiding**

_____

**Brief of Appellants,**

**Jerome J. Isaac and Michelle P. Isaac**

_____

TO THE HONORABLE COURT OF APPEALS:

Appellants, Jerome J. Isaac and Michelle P. Isaac (hereinafter "Isaac"), respectfully submit this brief in appeal of the summary judgment that they take nothing in their claims against Vendor Resource Management, Inc. ("VRM"), Mortgage Electronic Registration Systems, Inc. ("MERS") and Citimortgage, Inc. ("Citi") and that their claims against

appellees be dismissed with prejudice, signed by the trial court May 23, 2014 ("Summary Judgment"), which judgment the trial court declined to vacate. This is an appeal from the 26th District Court of Williamson County, Texas, in Cause No. 13-0472-C26, in which Appellants Isaac were the plaintiffs and appellees were the Appellees.

## Statement of the Case

This is a case brought by the Isaacs against appellees for violations of the Texas Debt Collection Act (seeking damages and injunctive relief), Property Code, for the filing of a fraudulent lien instrument, breach of contract, to quiet title subject to any valid and subsisting lien, and seeking injunctive relief under the trial court's inherent powers and the TDCA. After considering summary judgment motions filed by (a) VRM and (b) MERS and Citi, the trial court granted the summary judgment motions. Isaacs filed their Motion to Vacate, which was overruled by operation of law, after which the Isaacs gave notice of their appeal.

## Statement Regarding Oral Argument

Appellants would welcome the opportunity for oral argument and requests they be so heard, due to the novelty of the issues and factual background to which the applicable law is to be applied.

**Points of Error**

**POINT OF ERROR 1. The trial court erred in granting Summary Judgment to Citimortgage, MERS and VRM because there was sufficient summary judgment evidence to permit the Isaacs to proceed to trial on one or more of their claims.**

**POINT OF ERROR 2. The trial court erred in granting Summary Judgment to Citimortgage, MERS and VRM, since the substitute substitute trustees putatively appointed by or for Citimortgage were each and all acting, on the face of the summary judgment record, without capacity at all relevant times, and hence all acts taken in furtherance of the invalid trustee sale are void.**

**Statement of the Facts**

The Isaacs filed their original petition with the District Clerk of Williamson County, which assigned the case to the 26th District Court.[1] The Isaacs thereafter filed a First Amended Original Petition.[2] VRM, MERS and Citi filed their Motions for Summary

---

[1] District Clerk's Official Record, pages 5-16.

[2] District Clerk's Official Record, pages 23-34.

Judgment on April 17, 2014 and April 3, 2014 respectively.[3] The Isaacs filed their Response[4] to the Motions for Summary Judgment on May 19, 2014 as permitted by the Court's Order of May 15, 2014.[5] Thereafter, on May 23, 2014, the trial court conducted a hearing on the Motions for Summary Judgment.[6] The Court granted the Summary Judgment.[7] The Isaacs filed their Motion to Vacate Judgment,[8] which was overruled by operation of law, and this appeal was taken by notice of appeal filed August 21, 2014.[9]

## Summary of Argument

The 26th District Court erred in granting a summary judgment for VRM, MERS and Citimortgage because the evidence before the court was to the effect that Citimortgage, MERS, the putatively appointed substitute trustees who conducted the sale of the Isaacs' Property, and VRM all lacked capacity for their various acts as a matter of public record, and because the summary judgment evidence and argument within the motions for

---

[3] District Clerk's Official Record, pages 314-359 and 40-313.

[4] District Clerk's Official Record, pages 369-401.

[5] District Clerk's Official Record, pages 363-366.

[6] District Clerk's Official Record, page 4 (docket sheet) and 432 (summary judgment).

[7] District Clerk's Official Record, page 432 (judgment) and page 4 (docket sheet).

[8] District Clerk's Official Record, pages 434-456.

[9] District Clerk's Official Record, pages 467-468.

summary judgment and response established that there was a sufficient legal basis for, and factual support for, each of the Isaacs' claims. Therefore, there was sufficient basis for the Isaacs' claims under TDCA, the Property Code, the Civil Practice & Remedies Code that the foreclosure threatened and effected in 2013 was wrongfully pursued by Citi and the subsequent forcible detainer proceeding was wrongfully pursued by VRM even after VRM no longer had any claim of title to the Property. The Isaacs' claims that involved allegations of reliance on representations of Citi personnel were not appropriate for disposition by summary judgment.

**Argument and Authorities**

**POINT OF ERROR 1. The trial court erred in granting Summary Judgment to Citimortgage, MERS and VRM because there was sufficient summary judgment evidence to permit the Isaacs to proceed to trial on one or more of their claims.**

The 2013 substitute trustee's sale, the resulting deed, and all acts taken with respect to the subsequent forcible detainer action should be held invalid for the plain reasons that (a) the process was predicated on the Assignment, which was not supported by authority to act as nominee for the assigning entity (the essential facts of which were not denied in the Motions for Summary Judgment, but were established by them).

The trial court should not have rendered the Summary Judgment, since (a) the Assignment and hence any appointment of trustees following the Assignment was of no effect; (b) that the foregoing documents are all void and should be removed from Official Public Records of Williamson County, Texas; (c) that Citi, MERS and VRM are liable to the Isaacs in respect of violations of the Texas Debt Collection Act for the Isaacs' reasonable and necessary attorney's fees and costs of court in this proceeding; and for such other and further relief as may be provided by law.

Citi, MERS and VRM were not entitled to summary judgment on a no-evidence or traditional basis:

A. Deficient Summary Judgment Evidence. The declaration of Travis Nurse (Exhibit A to the Citi-MERS MSJ) is insufficient as summary judgment evidence since it (1) avers no personal knowledge on the part of the affiant, but merely an examination of records in what form we are not told, (2) claims no actual examination of a document or record, only potentially vouching for electronic copies maintained by Citi, and clearly containing copies that are "Representation of Printed Document" rather than a copy of a physical document, (3) makes no claim of custody of any of the referenced documents by Citi on the basis of affiant having actually examined the document

itself.

B. <u>Fraudulent Lien Claim</u>. It is clear from the summary judgment evidence tendered to the Court by Citi that given the absence of apparent capacity on the part of the persons executing the Assignment, there have been violations of Texas Civil Practice & Remedies Code §12.002 *et seq*. The Isaacs are therefore entitled to damages, including statutory damages. Citi and MERS actively and knowingly made, presented or used a document, including but not limited to the Assignment, intending that the Assignment be given effect, intending that The Isaacs suffer financial injury, specifically the loss of their homestead as indicated by all other pleading and proof. Thus, the elements of Texas Civil Practice and Remedies Code §12.001 *et seq*. and the jeopardy of loss of title to The Isaacs' Property have been met and proven by the summary judgment evidence in the MSJ. Intent to cause harm in these cases is presumed. "In the context of Section 12.002(a)(3), Texas courts have interpreted the 'intent' element to require only that the person filing the fraudulent lien be aware of the harmful effect that filing such a lien could have on a landowner. *Taylor Elec . Services, Inc. v. Armstrong Elec. Supply*

*Co.*, 167 S.W.3d 522, 531-32 (Tex. App.-Ft. Worth 2005, no pet.)."

*Kingman Holdings, LLC v. BAC Home Loans Servicing, LP*, 2011 U.S. Dist. LEXIS 52807, 11-12 (E.D. Tex. Apr. 21, 2011). Appellees Citi and MERS possessed such awareness at the times of their relevant acts with the Assignment, which is clear from the fact that the same person signed the Assignment as a putative officer of MERS and as an assistant vice president of Sterling Capital, payee of the Note. Kathy Thorp was never constituted as an assistant secretary of MERS by the board of directors of MERS, as demonstrated by the appended Letter from Ohio Secretary of State, available online at http://www.sos.state.oh.us/SOS/Upload/news/DettelbachLtr9-1-10.pdf and the deposition of William Hultman referenced therein, Mr. Hultman at such time being secretary of MERS, particularly pages 94-96ff of such deposition, and thus Ms. Thorp did not have authority to execute the Assignment (Exhibit D to the Citi-MERS Motion). Hence, all acts flowing from and after the Assignment should be held void, the foreclosure acts disregarded and the Substitute Trustee's Deed of 2013 removed from the chain of title to the Property.

C.    Texas Debt Collection Act. The summary judgment evidence

appended to the Citi-MERS Motion proves that Citi threatened to take and did take actions prohibited by law, in violation of Chapter 392, Finance Code. Citi was certainly engaged in debt collection in the attempt to threaten and effect a nonjudicial foreclosure of a claimed lien on the Property. Citi is charged with knowledge of the state of the public record, which began with the fact that there was no proper Assignment to Citi, hence no proper appointment of substitute trustees by Citi, and extends to the resulting Substitute Trustee's Deed and the conveyances since (ending, so far as the summary judgment evidence shows, in Citi). It would seem that applying the standards of *Biggers v. BAC Home Loans Servicing, LP*, 2011 WL 588059, 2011 U.S. Dist. LEXIS 13104 (N.. D. Tex. 2011) and *Kaltenbach v. Richards*, 464 F.3d 524-529 (5th Cir. 2006), the activities of Citi with respect to foreclosure acts were clearly collection activity, and should be chargeable to Citi. Exhibits J-1 and J-2 as well as the Howell Affidavit to the Citi-MERS Motion establish that the acts complained of with respect to foreclosure activity were unquestionably done by Citi and not another party or nonparty.

D.    Injunctive Relief. The Isaacs are entitled to injunctive relief because they are statutorily entitled to it under TDCA due to the foregoing wrongful acts of Citi and VRM, to prevent further acts to deprive them of title to and possession of the Property, since there is a complete lack of chain of authority for all acts since the Assignment. There is further a right to injunctive relief under the Court's equitable powers, to prevent violations of the Isaacs' right to the ownership and possession of the Property as against those who cannot demonstrate their own right (including VRM), and from the Assignment forward Citi cannot claim that right.

E.    Damages and Exemplary Damages. Through the summary judgment evidence of all parties, The Isaacs have demonstrated their right to statutory, actual and exemplary damages as to Appellees, because of the clear absence of authority for the various persons to act for MERS (as to the Assignment), Citi and VRM, for the signers of documents to act in threatening or attempting to effect foreclosure in 2013 or foreclosure or eviction at present. The Isaacs are entitled to statutory damages under TDCA, but are further entitled to actual damages on their other theories of recovery, and to exemplary

damages due to the willful, wanton and reckless nature of the acts of Appellees in the absence of a chain of authority from the unsupported Assignment and subsequent instruments through the chain of deeds. Citi therefore cannot have proceeded in good faith to threaten foreclosure as to The Isaacs, when Citi was charged with knowledge of the absence of essential items in the public record beginning with the Assignment.

F.   Owner or Holder Status is Certainly Required to be a Mortgagee.

The plain language of the relevant statute, TEXAS PROPERTY CODE §51.001(4)  provides (emphasis supplied):

> "Mortgagee" means:
> (A) the **grantee, beneficiary, owner, or holder** of a security instrument;
> (B) a book entry system;or
> (C) **if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record**.

Thus since Citi had chosen to establish "mortgagee" status through recording, it is bound by the ineffectiveness of the Assignment, and should be required to record a proper and effective assignment or to refrain from attempting to enforce the lien of the Deed of Trust.

G.   **Wrongful Foreclosure Claim Is Valid**. The Citi-MERS Motion

misinterprets and misapplies the case law regarding wrongful foreclosure claims. Recently, the standard was clearly set forth by the Chief Judge of the Northern District:

> In Texas, the elements of a wrongful foreclosure claim are " (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex.App.2008, no pet.) (citing *Charter Nat'l Bank-Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex.App.1989, writ denied)); see also *Sotelo v. Interstate Fin. Corp.*, 224 S.W.3d 517, 523 (Tex.App.2007, no pet.) (" The elements of wrongful foreclosure are (1) an irregularity at the sale; and (2) the irregularity contributed to an inadequate price." (citing *Forestier v. San Antonio Sav. Ass'n*, 564 S.W.2d 160, 165 (Tex.App.1978, writ ref'd n.r.e.))). A claim for " wrongful foreclosure" is not available based merely on showing a defect in the foreclosure process; it is also necessary that there be an inadequate selling price resulting from the defect. Texas courts have yet to recognize a claim for " attempted wrongful foreclosure." See *Port City State Bank v. Leyco Constr. Co.*, 561 S.W.2d 546, 547 (Tex.Civ.App.1977, no writ); *Peterson v. Black*, 980 S.W.2d 818, 823 (Tex.App.1998, no pet.) (" [T]he mortgagor is only entitled to [recovery for the difference between the foreclosure value and the remaining balance on the debt] if (1) title to the property has passed to a third party; or (2) the property has been appropriated to the use and benefit of the mortgagee." ); see also *Farrell v. Hunt*, 714 S.W.2d 298, 299 (Tex.1986) (" In a wrongful foreclosure suit the measure of damages is the difference between the value of the property in question at the date of foreclosure and the remaining balance due on the

indebtedness.").

> Because under Texas law an inadequate selling price is a necessary element of a wrongful foreclosure action, a foreclosure sale is a precondition to recovery. The Biggers only allege that BAC undertook wrongful conduct in preparation for foreclosure, but not that the foreclosure sale actually occurred or that the price that was paid was inadequate. The Biggers have therefore failed to plead a plausible claim for wrongful foreclosure. See, e.g., *Smith v. J.P. Morgan Chase Bank N.A.*, 2010 WL 4622209, at *2-3 (S.D.Tex. Nov. 4, 2010) (dismissing wrongful foreclosure claim under Rule 12(b)(6) where no foreclosure sale occurred, because of failure to state claim recognized under state law); *Baker v. Countrywide Home Loans, Inc.*, 2009 WL 1810336, at *4 (N.D.Tex. June 24, 2009) (Boyle, J.) (granting summary judgment because the Isaacs never lost possession of homestead, even though lender commenced foreclosure proceedings).

*Biggers*, at 729-730. Having lost possession is <u>not</u> a necessary element of the claim, but having lost title is. The Isaacs clearly lost title to the Property, and have been in constant jeopardy of loss of possession of the Property ever since the first notice/demand for possession was issued to them by the anonymous party via Jack O'Boyle & Associates, even to the point of imminent threat of enforcement of the writ of possession in September, 2013. Given the state of the public record, the sale was inherently tainted and should be set aside. *Terra XXI, Ltd.*, cited by Citi-MERS in their Motion at page 28,

did not opine that a sale price exceeding 50% of the property's value was not *per se* grossly inadequate, but cited to yet another case where that finding had been made; *Terra* involved a property whose fair market value was stated to be $5,700,000, and hence not comparable in terms of the marketability or range of potential bidders to the Property. Additionally, the tender of the full amount of the Note should not be held to be required here as a condition of removal of the Substitute Trustee's Deed from the chain of title to the Property, but merely reinstatement of the Note and lien to its status before it was wrongfully accelerated and the claimed lien securing it foreclosed.

H. Summary judgment is particularly inappropriate when matters that are inherently those for a fact finder-such as **intent, knowledge, motive, reliance**, and the like-constitute essential elements of recovery or defense. *Grotjohn Precise Connexiones International v. Jem Financial, Inc.*, 12 S.W.3d 859, 865 (Tex.App.–Texarkana 2000), emphasis supplied; citing *Hilton v. Texas Inv. Bank, N.A.*, 650 S.W.2d 545, 547 (Tex.App.– Houston [14th Dist.] 1983, no writ); *Kolb v. Texas Employers' Ins. Ass'n,* 585 S.W.2d 870, 873

(Tex.Civ.App. – Texarkana 1979, writ ref'd n.r.e.). When, as here, The Isaacs relied on misrepresentations by Citi (a) as to the capacity of one or more persons purporting to act (1) in effecting a foreclosure for Appellee, (b) modifying or not modifying the Loan while at the same time threatening and effecting foreclosure while promising not to foreclose, (c) appointing trustees and/or to have such trustees act to effect the non-judicial foreclosure which they did in 2013, then there is at minimum conflicting evidence as to representations bearing on liability of The Isaacs and Citi related to the Loan, and the trier of fact should have an opportunity to fully evaluate the testimony of the individual The Isaacs, Citi's representatives and other persons in open court at trial.

I.    VRM's summary judgment evidence, via Exhibit D (Berain Affidavit) and Exhibit E to the VRM Motion, establish that VRM *per se* violated the Texas Debt Collection Act in seeking to take actions prohibited by law in seeking eviction of The Isaacs from the Property, because demand for possession was made (prior to filing the Forcible Detainer Suit) that did not comport with the requirements of Texas Property Code §§24.002 and 24.005 that such demand for possession be made

by, or clearly on behalf of, a party having a clear right to the Property. A generic notice and demand, rather than one made on behalf of a clear and specific claimant, is not statutorily sufficient to support a forcible detainer suit. Further, an entity such as VRM that is and was not in title to the Property was without standing to be the plaintiff in the Forcible Detainer Case. Therefore, in violation of Tex. Fin. Code §392.301(a)(8), VRM threatened to take and/or did take several actions prohibited by law, in that:

(1) VRM, relying on the insufficient pre-suit notice to The Isaacs that is shown appended to the Berain Affidavit, filed suit for forcible detainer against The Isaacs in the Justice Court, Precinct 4, of Williamson County, Texas, in the Forcible Detainer Case and obtained a writ of possession, as detailed in the Brinkley Affidavit appended to the RSJ, and threatened then to imminently dispossess The Isaacs from the Property;

(2) the Reconveyance Deed, as VRM refers to it, Exhibit E to the VRM Motion, establishes that VRM wishes to assert that it conveyed the Property to Appellee Citi on June 10, 2013, yet the Writ of Possession was issued on behalf of VRM by

the Justice of the Peace, Precinct 4, on September 16, 2013, **some three months after VRM now says it didn't claim any interest in the Property**;

(3) Under Tex. Fin. Code §392.403, VRM's actions without legal foundation constitute violations of the TDCA, and render VRM liable to The Isaacs for statutory damages, injunctive relief, costs and reasonable attorney's fees;

(4) The acts of VRM (a) were debt collection activities, and (b) were in violation of and actionable under TDCA because they were actions taken that were prohibited by law. *Biggers v. BAC Home Loans Servicing, LP*, 2011 WL 588059, 2011 U.S. Dist. LEXIS 13104 (N.. D. Tex. 2011).[10] The Isaacs should be granted their actual damages, statutory damages, costs and reasonable attorney's fees for enforcement of their claims against VRM under TDCA. The Isaacs <u>do</u> allege loss outside the Loan documents, and the economic loss rule is

---

[10] Judge Fitzwater, in deciding *Biggers v. BAC Home Loans Servicing, LP*, 2011 WL 588059, 2011 U.S. Dist. LEXIS 13104 (N.. D. Tex. 2011), found that TDCA applied to foreclosure activity. The Fifth Circuit has recently determined that it applies to mortgage loan servicing as well as foreclosure activity specifically, *Miller v. BAC Home Loans Servicing, L.P.,* 726 F.3d 717 (5th Cir. 2013), and therefore The Isaacs' claims under TDCA are sound.

inapposite.

J.      By its own summary judgment evidence, VRM establishes that it took actions prohibited by law, which were therefore wrongful, in attempting to obtain possession of the Property. When taken together with the Brinkley Affidavit, it is clear that the writ of possession issued as to the Property, based on the judgment of possession in favor of VRM, was wrongfully issued at a time when VRM now claims to have had no interest whatsoever in the Property. Therefore, VRM has established that it wrongfully sought eviction of The Isaacs from the Property, and The Isaacs are entitled to judgment on their common law claim as well as their TDCA claim.

K.      Nothing in the VRM Motion or the Citi-MERS Motion established that VRM was ever the authorized agent for Citi.

**POINT OF ERROR 2. The trial court erred in granting Summary Judgment to Citimortgage, MERS and VRM, since the substitute substitute trustees putatively appointed by or for Citimortgage were each and all acting, on the face of the summary judgment record, without capacity at all relevant times, and hence all acts taken in furtherance of the invalid trustee sale are**

**void.**

The 2013 foreclosure and Substitute Trustee's Deed to Citi should be held invalid because the Assignment and Appointment each were executed by a person lacking authority, as outlined above. As set forth in the pleadings[11] and in the Brinkley Affidavit there are, under state court pleading standards, sufficient facts pleaded and established that are not inconsistent with Appellees' summary judgment proof, that would establish a violation of the TDCA because of the misleading course of conduct of Citi in dealing with the Isaacs as recognized under the even more stringent pleading federal pleading standards in *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723-724 (5th Cir. 2013). Further, Citi was charged with knowledge of the state of the public record in regard to the Assignment and Appointment and all subsequent predicate notices for the 2013 trustee's sale and beyond, and all other acts that flowed from any of the foregoing documents. The Fifth District Court of Appeals explained in a relevant factual situation:

> In this case, the Martins cannot be considered innocent purchasers without notice because, although they submitted affidavit testimony stating they purchased the property in good faith, **they are charged with knowledge of all facts appearing in the chain of title to the property.** *See Westland Oil Dev. Corp. v. Gulf Oil Corp.*, **637 S.W.2d 903, 908 (Tex.1982). Any description, recital of fact, or reference to other documents in the chain of title puts the purchaser on inquiry notice, and "he is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is**

---

[11]District Clerk's record, pages 7-9.

**exhausted and a complete knowledge of all matters referred to and affecting the estate is obtained." *Id.***

*Martin v. Cadle Co.*, 133 S.W.3d 897, 905; 2004 Tex. App. LEXIS 4478 **16-17 (Tex.App. – Dallas 2004), emphasis supplied. Citi, MERS and VRM was charged at all times relevant to the foreclosure and eviction processes with knowledge of the state of the public record, including the absence of a valid Assignment or Appointment of Substitute Trustees (and, in the case of VRM, the absence of title in VRM or its authorized principal at the time of VRM's critical acts, including its last effort to have a writ of possession executed as to the Property of the Isaacs when VRM no longer had even a superficial claim of title).

The standard for compliance with lien instruments and applicable statutes is strict, and even "harsh" in the terminology of our courts.[12] Strict compliance requires that

---

[12] The Thirteenth Court of Appeals explained, in *Bonilla v. Roberson*, 918 S.W.2d 17, 21 (Tex. App. – Corpus Christi, 1996) (emphasis supplied):

> The power of the trustee to sell the deed for the parties is derived wholly from the trust instrument. *Winters v. Slover*, 151 Tex. 485, 251 S.W.2d 726, 728 (1952). Because a power of sale under a deed of trust is a harsh method of collecting debts and of disposing of another's property, it can only be exercised by strict compliance with the note and conditions of sale. *Crow v. Heath*, 516 S.W.2d 225, 228 (Tex.Civ.App.--Corpus Christi 1974, writ ref'd n.r.e.). Thus, **a trustee must strictly pursue the terms of the instrument, the provisions of law relative to such a sale, and the details prescribed as to the manner of the sale. *See Durkay v. Madco Oil Co.*, 862 S.W.2d 14, 17 (Tex.App.--Corpus Christi 1993, writ denied); *Randolph v. Citizens Nat'l Bank*, 141 S.W.2d 1030, 1032 (Tex.Civ.App.--Amarillo 1940, writ dism'd judgm't cor.).**
>
> When exercising a power contained in a deed of trust, the trustee becomes a special agent for both parties, and he must act with absolute impartiality and with fairness to all concerned in order to achieve the   objective of the trust. *See Hammonds v. Holmes*,

there be no foreclosure attempt without clearly established authority for the Assignment or Appointment. There was no strict compliance with applicable law, since the Assignment, Appointment and any subsequent trustee or other deed(s) were all made without authority, of which Citi (and MERS, as to the Assignment) would have been aware since Citi and MERS were charged with knowledge of the state of the public record at the times of creation and execution of each such instrument.

**Conclusion/Prayer**

For the reasons stated above, this Court should reverse and vacate the summary judgment of the 26th District Court that the claims of Appellants Isaac against Citi, MERS and VRM be dismissed with prejudice, and should remand the case to the 26th District Court for a new trial. Appellants Isaac further request that all costs of this appeal be taxed against Appellees.

---

559 S.W.2d 345, 347 (Tex.1977); *First Federal Sav. & Loan Ass'n v. Sharp*, 359 S.W.2d 902, 904 (Tex.1962).

In addition, **a purchaser at a foreclosure sale obtains that title which the trustee has authority to convey.** *Durkay***, 862 S.W.2d at 17.**

Respectfully submitted,

*/s/ Michael Brinkley*

_____

**Michael Brinkley**
State Bar No. 03004300
BRINKLEY LAW PLLC
P. O. Box 820711
Fort Worth, Texas 76182-0711
817.284.3535; fax 888.511.0946
michael@brinkleypllc.com
Attorney for Appellants

## Certificate of Compliance for T.R.A.P. 9.4(i)(3)

I certify that the word count indicated by my word processing software for the portions of the foregoing brief covered by Texas Rule of Appellate Procedure 9.4(i)(1) is 4,214.

Dated: February 2, 2015.

*/s/ Michael Brinkley*

_____

**Michael Brinkley**

## Certificate of Service

I certify that a true and correct copy of the foregoing has been served on the following counsel and/or pro se parties of record, by mailing in accordance with Texas Rule of Appellate Procedure 9.5, on the date shown:

**B. David L. Foster**
**John W. Ellis**
LOCKE LORD LLP
600 Congress Avenue, Suite 2200
Austin, Texas 78701
voice 512.305.4700; fax 512.305.4800

**Christopher Ferguson**
LAW OFFICES OF JACK O'BOYLE
P.O. Box 815369
Dallas, Texas 75381
voice 972.247.0653, fax 972.247.0642.

**Mark D. Hopkins**
HOPKINS & WILLIAMS
12117 Bee Caves Road, Suite 260
Austin, Texas 78738
voice 512.600.4320, fax 512.600.4326

Dated: February 2, 2015.

*/s/ Michael Brinkley*

_____
**Michael Brinkley**

APPENDIX 1

CAUSE NO. 13-0472-C26

| JEROME J. ISAAC and | § | IN THE DISTRICT COURT OF |
| MICHELLE P. ISAAC, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | WILLIAMSON COUNTY, TEXAS |
| VENDOR RESOURCE MANAGEMENT, | § | |
| INC., MORTGAGE ELECTRONIC | § | |
| REGISTRATION SYSTEMS, INC. and | § | |
| CITIMORTGAGE, INC., | § | 26TH JUDICIAL DISTRICT |
| Defendants. | § | |

## FINAL ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

On this day, the Court considered the Traditional and No-Evidence Motion for Summary Judgment and Motion to Sever filed by Defendants CitiMortgage, Inc. and Mortgage Electronic Registration Systems, Inc. (collectively the "Lender Defendants") and the Motion for Final Summary Judgment by Defendant Vendor Resource Management ("VRM"). After careful consideration of the Motions, any timely responses thereto, the competent evidence, all pleadings properly before the Court, the arguments of counsel, if any, and all other matters properly before the Court, the Court is of the opinion that the Motions should be granted.

Therefore, IT IS ORDERED that the Lender Defendants' Traditional and No-Evidence Motion for Summary Judgment and VRM's Motion for Final Summary Judgment are hereby GRANTED and that Plaintiffs Jerome J. Isaac and Michelle P. Isaac take nothing.

IT IS FURTHER ORDERED that all costs are taxed against Plaintiffs.

This judgment finally disposes of all claims against all parties and is appealable.

SIGNED this the 23rd day of ____May____, 2014.

_____
BILLY RAY STUBBLEFIELD, DISTRICT JUDGE

FILED
at 1:00 o'clock ___ M
MAY 23 2014
_____
District Clerk, Williamson Co., TX.

ORDER GRANTING DEFENDANTS MOTIONS FOR SUMMARY JUDGMENT                PAGE 1 OF 1

432

APPENDIX 2

CIVIL PRACTICE AND REMEDIES CODE

TITLE 2. TRIAL, JUDGMENT, AND APPEAL

SUBTITLE A. GENERAL PROVISIONS

CHAPTER 12. LIABILITY RELATED TO A FRAUDULENT COURT RECORD OR A FRAUDULENT LIEN OR CLAIM FILED AGAINST REAL OR PERSONAL PROPERTY

Sec. 12.001.  DEFINITIONS.  In this chapter:

(1)  "Court record" has the meaning assigned by Section 37.01, Penal Code.

(2)  "Exemplary damages" has the meaning assigned by Section 41.001.

(2-a)  "Filing office" has the meaning assigned by Section 9.102, Business & Commerce Code.

(2-b)  "Financing statement" has the meaning assigned by Section 9.102, Business & Commerce Code.

(2-c)  "Inmate" means a person housed in a secure correctional facility.

(3)  "Lien" means a claim in property for the payment of a debt and includes a security interest.

(4)  "Public servant" has the meaning assigned by Section 1.07, Penal Code, and includes officers and employees of the United States.

(5)  "Secure correctional facility" has the meaning assigned by Section 1.07, Penal Code.
Added by Acts 1997, 75th Leg., ch. 189, Sec. 16, eff. May 21, 1997.
 Renumbered from Civil Practice & Remedies Code Sec. 11.001 by Acts 1999, 76th Leg., ch. 62, Sec. 19.01(3), eff. Sept. 1, 1999.
Amended by:

Acts 2007, 80th Leg., R.S., Ch. 895, Sec. 1, eff. September 1, 2007.


Sec. 12.002.  LIABILITY. (a)  A person may not make, present,

or use a document or other record with:

(1)  knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

(2)  intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property;  and

(3)  intent to cause another person to suffer:

(A)  physical injury;

(B)  financial injury;  or

(C)  mental anguish or emotional distress.

(a-1)  Except as provided by Subsection (a-2), a person may not file an abstract of a judgment or an instrument concerning real or personal property with a court or county clerk, or a financing statement with a filing office, if the person:

(1)  is an inmate; or

(2)  is not licensed or regulated under Title 11, Insurance Code, and is filing on behalf of another person who the person knows is an inmate.

(a-2)  A person described by Subsection (a-1) may file an abstract, instrument, or financing statement described by that subsection if the document being filed includes a statement indicating that:

(1)  the person filing the document is an inmate; or

(2)  the person is filing the document on behalf of a person who is an inmate.

(b)  A person who violates Subsection (a) or (a-1) is liable to each injured person for:

(1)  the greater of:

          (A)  $10,000; or

          (B)  the actual damages caused by the violation;

     (2)  court costs;

     (3)  reasonable attorney's fees;  and

     (4)  exemplary damages in an amount determined by the court.

    (c)  A person claiming a lien under Chapter 53, Property Code, is not liable under this section for the making, presentation, or use of a document or other record in connection with the assertion of the claim unless the person acts with intent to defraud.

Added by Acts 1997, 75th Leg., ch. 189, Sec. 16, eff. May 21, 1997.

 Renumbered from Civil Practice & Remedies Code Sec. 11.002 by Acts 1999, 76th Leg., ch. 62, Sec. 19.01(3), eff. Sept. 1, 1999.

Amended by:

    Acts 2007, 80th Leg., R.S., Ch. 895, Sec. 2, eff. September 1, 2007.

    Acts 2009, 81st Leg., R.S., Ch. 1260, Sec. 1, eff. September 1, 2009.


    Sec. 12.003.  CAUSE OF ACTION.  (a)  The following persons may bring an action to enjoin violation of this chapter or to recover damages under this chapter:

     (1)  the attorney general;

     (2)  a district attorney;

     (3)  a criminal district attorney;

     (4)  a county attorney with felony responsibilities;

     (5)  a county attorney;

     (6)  a municipal attorney;

     (7)  in the case of a fraudulent judgment lien, the person against whom the judgment is rendered;  and

     (8)  in the case of a fraudulent lien or claim against real or personal property or an interest in real or personal

property, the obligor or debtor, or a person who owns an interest in the real or personal property.

(b)  Notwithstanding any other law, a person or a person licensed or regulated by Title 11, Insurance Code (the Texas Title Insurance Act), does not have a duty to disclose a fraudulent, as described by Section 51.901(c), Government Code, court record, document, or instrument purporting to create a lien or purporting to assert a claim on real property or an interest in real property in connection with a sale, conveyance, mortgage, or other transfer of the real property or interest in real property.

(c)  Notwithstanding any other law, a purported judgment lien or document establishing or purporting to establish a judgment lien against property in this state, that is issued or purportedly issued by a court or a purported court other than a court established under the laws of this state or the United States, is void and has no effect in the determination of any title or right to the property.

Added by Acts 1997, 75th Leg., ch. 189, Sec. 16, eff. May 21, 1997.
 Renumbered from Civil Practice & Remedies Code Sec. 11.003 by Acts 1999, 76th Leg., ch. 62, Sec. 19.01(3), eff. Sept. 1, 1999.
Amended by:

Acts 2005, 79th Leg., Ch. 728, Sec. 11.104, eff. September 1, 2005.


Sec. 12.004.  VENUE.  An action under this chapter may be brought in any district court in the county in which the recorded document is recorded or in which the real property is located.
Added by Acts 1997, 75th Leg., ch. 189, Sec. 16, eff. May 21, 1997.
 Renumbered from Civil Practice & Remedies Code Sec. 11.004 by Acts 1999, 76th Leg., ch. 62, Sec. 19.01(3), eff. Sept. 1, 1999.


Sec. 12.005.  FILING FEES.  (a)  The fee for filing an action

under this chapter is $15. The plaintiff must pay the fee to the clerk of the court in which the action is filed. Except as provided by Subsection (b), the plaintiff may not be assessed any other fee, cost, charge, or expense by the clerk of the court or other public official in connection with the action.

(b)  The fee for service of notice of an action under this section charged to the plaintiff may not exceed:

(1)  $20 if the notice is delivered in person; or

(2)  the cost of postage if the service is by registered or certified mail.

(c)  A plaintiff who is unable to pay the filing fee and fee for service of notice may file with the court an affidavit of inability to pay under the Texas Rules of Civil Procedure.

(d)  If the fee imposed under Subsection (a) is less than the filing fee the court imposes for filing other similar actions and the plaintiff prevails in the action, the court may order a defendant to pay to the court the differences between the fee paid under Subsection (a) and the filing fee the court imposes for filing other similar actions.
Added by Acts 1997, 75th Leg., ch. 189, Sec. 16, eff. May 21, 1997.
 Renumbered from Civil Practice & Remedies Code Sec. 11.005 by Acts 1999, 76th Leg., ch. 62, Sec. 19.01(3), eff. Sept. 1, 1999.


Sec. 12.006.  PLAINTIFF'S COSTS.  (a)  The court shall award the plaintiff the costs of bringing the action if:

(1)  the plaintiff prevails;  and

(2)  the court finds that the defendant, at the time the defendant caused the recorded document to be recorded or filed, knew or should have known that the recorded document is fraudulent, as described by Section 51.901(c), Government Code.

(b)  For purposes of this section, the costs of bringing the action  include  all  court  costs,  attorney's  fees,  and  related

expenses of bringing the action, including investigative expenses.

Added by Acts 1997, 75th Leg., ch. 189, Sec. 16, eff. May 21, 1997.

Renumbered from Civil Practice & Remedies Code Sec. 11.006 by Acts 1999, 76th Leg., ch. 62, Sec. 19.01(3), eff. Sept. 1, 1999.


Sec. 12.007.  EFFECT ON OTHER LAW.  This law is cumulative of other law under which a person may obtain judicial relief with respect to a recorded document or other record.

Added by Acts 1997, 75th Leg., ch. 189, Sec. 16, eff. May 21, 1997.

Renumbered from Civil Practice & Remedies Code Sec. 11.007 by Acts 1999, 76th Leg., ch. 62, Sec. 19.01(3), eff. Sept. 1, 1999.

FINANCE CODE

TITLE 5. PROTECTION OF CONSUMERS OF FINANCIAL SERVICES

CHAPTER 392. DEBT COLLECTION

SUBCHAPTER A. GENERAL PROVISIONS

Sec. 392.001.  DEFINITIONS.  In this chapter:

(1)  "Consumer" means an individual who has a consumer debt.

(2)  "Consumer debt" means an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction.

(3)  "Creditor" means a party, other than a consumer, to a transaction or alleged transaction involving one or more consumers.

(4)  "Credit bureau" means a person who, for compensation, gathers, records, and disseminates information relating to the creditworthiness, financial responsibility, and paying habits of, and similar information regarding, a person for the purpose of furnishing that information to another person.

(5)  "Debt collection" means an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor.

(6)  "Debt collector" means a person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts.

(7)  "Third-party debt collector" means a debt collector, as defined by 15 U.S.C. Section 1692a(6), but does not include an attorney collecting a debt as an attorney on behalf of and in the name of a client unless the attorney has nonattorney employees who:

(A)  are regularly engaged to solicit debts for collection;  or

(B)  regularly make contact with debtors for the purpose of collection or adjustment of debts.

Acts 1997, 75th Leg., ch. 1008, Sec. 1, eff. Sept. 1, 1997.  Amended by Acts 1999, 76th Leg., ch. 62, Sec. 7.42, eff. Sept. 1, 1999.


SUBCHAPTER B. SURETY BOND

Sec. 392.101.  BOND REQUIREMENT.  (a)  A third-party debt collector or credit bureau may not engage in debt collection unless the third-party debt collector or credit bureau has obtained a surety bond issued by a surety company authorized to do business in this state as prescribed by this section.  A copy of the bond must be filed with the secretary of state.

(b)  The bond must be in favor of:

(1)  any person who is damaged by a violation of this chapter; and

(2)  this state for the benefit of any person who is damaged by a violation of this chapter.

(c)  The bond must be in the amount of $10,000.

Acts 1997, 75th Leg., ch. 1008, Sec. 1, eff. Sept. 1, 1997.


Sec. 392.102.  CLAIM AGAINST BOND.  A person who claims against a bond for a violation of this chapter may maintain an action against the third-party debt collector or credit bureau and against the surety.  The aggregate liability of the surety to all persons damaged by a violation of this chapter may not exceed the amount of the bond.

Acts 1997, 75th Leg., ch. 1008, Sec. 1, eff. Sept. 1, 1997.


SUBCHAPTER C. INFORMATION IN FILES OF CREDIT BUREAU OR DEBT COLLECTOR

Sec. 392.201.  REPORT TO CONSUMER.  Not later than the 45th day after the date of the request, a credit bureau shall provide to a person in its registry a copy of all information contained in its files concerning that person.

Acts 1997, 75th Leg., ch. 1008, Sec. 1, eff. Sept. 1, 1997.


Sec. 392.202.  CORRECTION OF THIRD-PARTY DEBT COLLECTOR'S OR CREDIT BUREAU'S FILES.  (a)  An individual who disputes the accuracy of an item that is in a third-party debt collector's or credit bureau's file on the individual and that relates to a debt being collected by the third-party debt collector may notify in writing the third-party debt collector of the inaccuracy.  The third-party debt collector shall make a written record of the dispute.  If the third-party debt collector does not report information related to the dispute to a credit bureau, the

third-party debt collector shall cease collection efforts until an investigation of the dispute described by Subsections (b)-(e) determines the accurate amount of the debt, if any.  If the third-party debt collector reports information related to the dispute to a credit bureau, the reporting third-party debt collector shall initiate an investigation of the dispute described by Subsections (b)-(e) and shall cease collection efforts until the investigation determines the accurate amount of the debt, if any.  This section does not affect the application of Chapter 20, Business & Commerce Code, to a third-party debt collector subject to that chapter.

(b)  Not later than the 30th day after the date a notice of inaccuracy is received, a third-party debt collector who initiates an investigation shall send a written statement to the individual:

(1)  denying the inaccuracy;

(2)  admitting the inaccuracy;  or

(3)  stating that the third-party debt collector has not had sufficient time to complete an investigation of the inaccuracy.

(c)  If the third-party debt collector admits that the item is inaccurate under Subsection (b), the third-party debt collector shall:

(1)  not later than the fifth business day after the date of the admission, correct the item in the relevant file;  and

(2)  immediately cease collection efforts related to the portion of the debt that was found to be inaccurate and on correction of the item send, to each person who has previously received a report from the third-party debt collector containing the inaccurate information, notice of the inaccuracy and a copy of an accurate report.

(d)  If the third-party debt collector states that there has not been sufficient time to complete an investigation, the third-party debt collector shall immediately:

(1)  change the item in the relevant file as requested by the individual;

(2)  send to each person who previously received the report containing the information a notice that is equivalent to a notice under Subsection (c) and a copy of the changed report;  and

(3)  cease collection efforts.

(e)  On completion by the third-party debt collector of the investigation, the third-party debt collector shall inform the individual of the determination of whether the item is accurate or inaccurate.  If the third-party debt collector determines that the information was accurate, the third-party debt collector may again

report that information and resume collection efforts.

Acts 1997, 75th Leg., ch. 1008, Sec. 1, eff. Sept. 1, 1997.  Amended by
Acts 2003, 78th Leg., ch. 851, Sec. 1, eff. Sept. 1, 2003.


SUBCHAPTER D. PROHIBITED DEBT COLLECTION METHODS

Sec. 392.301.  THREATS OR COERCION.  (a)  In debt collection, a
debt collector may not use threats, coercion, or attempts to coerce that
employ any of the following practices:

(1)  using or threatening to use violence or other criminal
means to cause harm to a person or property of a person;

(2)  accusing falsely or threatening to accuse falsely a person
of fraud or any other crime;

(3)  representing or threatening to represent to any person
other than the consumer that a consumer is wilfully refusing to pay a
nondisputed consumer debt when the debt is in dispute and the consumer
has notified in writing the debt collector of the dispute;

(4)  threatening to sell or assign to another the obligation of
the consumer and falsely representing that the result of the sale or
assignment would be that the consumer would lose a defense to the
consumer debt or would be subject to illegal collection attempts;

(5)  threatening that the debtor will be arrested for
nonpayment of a consumer debt without proper court proceedings;

(6)  threatening to file a charge, complaint, or criminal
action against a debtor when the debtor has not violated a criminal law;

(7)  threatening that nonpayment of a consumer debt will result
in the seizure, repossession, or sale of the person's property without
proper court proceedings;  or

(8)  threatening to take an action prohibited by law.
(b)  Subsection (a) does not prevent a debt collector from:

(1)  informing a debtor that the debtor may be arrested after
proper court proceedings if the debtor has violated a criminal law of
this state;

(2)  threatening to institute civil lawsuits or other judicial
proceedings to collect a consumer debt;  or

(3)  exercising or threatening to exercise a statutory or
contractual right of seizure, repossession, or sale that does not
require court proceedings.

Acts 1997, 75th Leg., ch. 1008, Sec. 1, eff. Sept. 1, 1997.

Sec. 392.302.  HARASSMENT;  ABUSE.  In debt collection, a debt collector may not oppress, harass, or abuse a person by:

(1)  using profane or obscene language or language intended to abuse unreasonably the hearer or reader;

(2)  placing telephone calls without disclosing the name of the individual making the call and with the intent to annoy, harass, or threaten a person at the called number;

(3)  causing a person to incur a long distance telephone toll, telegram fee, or other charge by a medium of communication without first disclosing the name of the person making the communication;  or

(4)  causing a telephone to ring repeatedly or continuously, or making repeated or continuous telephone calls, with the intent to harass a person at the called number.

Acts 1997, 75th Leg., ch. 1008, Sec. 1, eff. Sept. 1, 1997.


Sec. 392.303.  UNFAIR OR UNCONSCIONABLE MEANS.  (a)  In debt collection, a debt collector may not use unfair or unconscionable means that employ the following practices:

(1)  seeking or obtaining a written statement or acknowledgment in any form that specifies that a consumer's obligation is one incurred for necessaries of life if the obligation was not incurred for those necessaries;

(2)  collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer; or

(3)  collecting or attempting to collect an obligation under a check, draft, debit payment, or credit card payment, if:

(A)  the check or draft was dishonored or the debit payment or credit card payment was refused because the check or draft was not drawn or the payment was not made by a person authorized to use the applicable account;

(B)  the debt collector has received written notice from a person authorized to use the account that the check, draft, or payment was unauthorized; and

(C)  the person authorized to use the account has filed a report concerning the unauthorized check, draft, or payment with a law

enforcement agency, as defined by Article 59.01, Code of Criminal Procedure, and has provided the debt collector with a copy of the report.

(b)  Notwithstanding Subsection (a)(2), a creditor may charge a reasonable reinstatement fee as consideration for renewal of a real property loan or contract of sale, after default, if the additional fee is included in a written contract executed at the time of renewal.

(c)  Subsection (a)(3) does not prohibit a debt collector from collecting or attempting to collect an obligation under a check, draft, debit payment, or credit card payment if the debt collector has credible evidence, including a document, video recording, or witness statement, that the report filed with a law enforcement agency, as required by Subsection (a)(3)(C), is fraudulent and that the check, draft, or payment was authorized.

Acts 1997, 75th Leg., ch. 1008, Sec. 1, eff. Sept. 1, 1997.
Amended by:
     Acts 2005, 79th Leg., Ch. 505 (H.B. 628), Sec. 1, eff. September 1, 2005.


     Sec. 392.304.  FRAUDULENT, DECEPTIVE, OR MISLEADING REPRESENTATIONS.  (a)  Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices:
          (1)  using a name other than the:
               (A)  true business or professional name or the true personal or legal name of the debt collector while engaged in debt collection;  or
               (B)  name appearing on the face of the credit card while engaged in the collection of a credit card debt;
          (2)  failing to maintain a list of all business or professional names known to be used or formerly used by persons collecting consumer debts or attempting to collect consumer debts for the debt collector;
          (3)  representing falsely that the debt collector has information or something of value for the consumer in order to solicit or discover information about the consumer;
          (4)  failing to disclose clearly in any communication with the debtor the name of the person to whom the debt has been assigned or is owed when making a demand for money;
          (5)  in the case of a third-party debt collector, failing to

disclose, except in a formal pleading made in connection with a legal action:

(A) that the communication is an attempt to collect a debt and that any information obtained will be used for that purpose, if the communication is the initial written or oral communication between the third-party debt collector and the debtor; or

(B) that the communication is from a debt collector, if the communication is a subsequent written or oral communication between the third-party debt collector and the debtor;

(6) using a written communication that fails to indicate clearly the name of the debt collector and the debt collector's street address or post office box and telephone number if the written notice refers to a delinquent consumer debt;

(7) using a written communication that demands a response to a place other than the debt collector's or creditor's street address or post office box;

(8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding;

(9) representing falsely that a debt collector is vouched for, bonded by, or affiliated with, or is an instrumentality, agent, or official of, this state or an agency of federal, state, or local government;

(10) using, distributing, or selling a written communication that simulates or is represented falsely to be a document authorized, issued, or approved by a court, an official, a governmental agency, or any other governmental authority or that creates a false impression about the communication's source, authorization, or approval;

(11) using a seal, insignia, or design that simulates that of a governmental agency;

(12) representing that a consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if a written contract or statute does not authorize the additional fees or charges;

(13) representing that a consumer debt will definitely be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if the award of the fees or charges is subject to judicial discretion;

(14) representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business;

(15)  using a written communication that violates the United States postal laws and regulations;

(16)  using a communication that purports to be from an attorney or law firm if it is not;

(17)  representing that a consumer debt is being collected by an attorney if it is not;

(18)  representing that a consumer debt is being collected by an independent, bona fide organization engaged in the business of collecting past due accounts when the debt is being collected by a subterfuge organization under the control and direction of the person who is owed the debt;  or

(19)  using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer.

(b)  Subsection (a)(4) does not apply to a person servicing or collecting real property first lien mortgage loans or credit card debts.

(c)  Subsection (a)(6) does not require a debt collector to disclose the names and addresses of employees of the debt collector.

(d)  Subsection (a)(7) does not require a response to the address of an employee of a debt collector.

(e)  Subsection (a)(18) does not prohibit a creditor from owning or operating a bona fide debt collection agency.

Acts 1997, 75th Leg., ch. 1008, Sec. 1, eff. Sept. 1, 1997.  Amended by Acts 2003, 78th Leg., ch. 851, Sec. 2, eff. Sept. 1, 2003;  Acts 2003, 78th Leg., 3rd C.S., ch. 3, Sec. 28.01, eff. Jan. 11, 2004.


Sec. 392.305.  DECEPTIVE USE OF CREDIT BUREAU NAME.  A person may not use "credit bureau," "retail merchants," or "retail merchants association" in the person's business or trade name unless:

(1)  the person is engaged in gathering, recording, and disseminating information, both favorable and unfavorable, relating to the creditworthiness, financial responsibility, and paying habits of, and similar information regarding, persons being considered for credit extension so that a prospective creditor can make a sound decision in the extension of credit;  or

(2)  the person is a nonprofit retail trade association that:

(A)  consists of individual members;

(B)  qualifies as a bona fide business league as defined by the United States Internal Revenue Service;  and

(C)  does not engage in the business of debt collection or

credit reporting.

Acts 1997, 75th Leg., ch. 1008, Sec. 1, eff. Sept. 1, 1997.


     Sec. 392.306.   USE OF INDEPENDENT DEBT COLLECTOR.   A creditor may
not use an independent debt collector if the creditor has actual
knowledge that the independent debt collector repeatedly or continuously
engages in acts or practices that are prohibited by this chapter.

Acts 1997, 75th Leg., ch. 1008, Sec. 1, eff. Sept. 1, 1997.


          SUBCHAPTER E. DEFENSE, CRIMINAL PENALTY, AND CIVIL REMEDIES

     Sec. 392.401.   BONA FIDE ERROR.   A person does not violate this
chapter if the action complained of resulted from a bona fide error that
occurred notwithstanding the use of reasonable procedures adopted to
avoid the error.

Acts 1997, 75th Leg., ch. 1008, Sec. 1, eff. Sept. 1, 1997.


     Sec. 392.402.   CRIMINAL PENALTY.   (a)  A person commits an offense
if the person violates this chapter.
     (b)  An offense under this section is a misdemeanor punishable by a
fine of not less than $100 or more than $500 for each violation.
     (c)  A misdemeanor charge under this section must be filed not
later than the first anniversary of the date of the alleged violation.

Acts 1997, 75th Leg., ch. 1008, Sec. 1, eff. Sept. 1, 1997.


     Sec. 392.403.   CIVIL REMEDIES.   (a)  A person may sue for:
          (1)  injunctive relief to prevent or restrain a violation of
this chapter;  and
          (2)  actual damages sustained as a result of a violation of
this chapter.
     (b)  A person who successfully maintains an action under Subsection
(a) is entitled to attorney's fees reasonably related to the amount of
work performed and costs.
     (c)  On a finding by a court that an action under this section was
brought in bad faith or for purposes of harassment, the court shall
award the defendant attorney's fees reasonably related to the work

performed and costs.

(d)  If the attorney general reasonably believes that a person is violating or is about to violate this chapter, the attorney general may bring an action in the name of this state against the person to restrain or enjoin the person from violating this chapter.

(e)  A person who successfully maintains an action under this section for violation of Section 392.101, 392.202, or 392.301(a)(3) is entitled to not less than $100 for each violation of this chapter.

Acts 1997, 75th Leg., ch. 1008, Sec. 1, eff. Sept. 1, 1997.


Sec. 392.404.  REMEDIES UNDER OTHER LAW.  (a)  A violation of this chapter is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and is actionable under that subchapter.

(b)  This chapter does not affect or alter a remedy at law or in equity otherwise available to a debtor, creditor, governmental entity, or other legal entity.

Acts 1997, 75th Leg., ch. 1008, Sec. 1, eff. Sept. 1, 1997.

TEXAS PROPERTY CODE

Sec. 24.002. FORCIBLE DETAINER. (a) A person who refuses to surrender possession of real property on demand commits a forcible detainer if the person:
(1) is a tenant or a subtenant wilfully and without force holding over after the termination of the tenant's right of possession;
(2) is a tenant at will or by sufferance, including an occupant at the time of foreclosure of a lien superior to the tenant's lease; or
(3) is a tenant of a person who acquired possession by forcible entry.
(b) The demand for possession must be made in writing by a person entitled to possession of the property and must comply with the requirements for notice to vacate under Section 24.005.

Acts 1983, 68th Leg., p. 3514, ch. 576, Sec. 1, eff. Jan. 1, 1984. Amended by Acts 1985, 69th Leg., ch. 200, Sec. 1, eff. Aug. 26, 1985; Acts 1989, 71st Leg., ch. 688, Sec. 2, eff. Sept. 1, 1989.

Sec. 24.003. SUBSTITUTION OF PARTIES. If a tenancy for a term expires while the tenant's suit for forcible entry is pending, the landlord may prosecute the suit in the tenant's name for the landlord's benefit and at the landlord's expense. It is immaterial whether the tenant received possession from the landlord or became a tenant after obtaining possession of the property.

Acts 1983, 68th Leg., p. 3515, ch. 576, Sec. 1, eff. Jan. 1, 1984. Amended by Acts 1985, 69th Leg., ch. 891, Sec. 1, eff. Aug. 26, 1985.

Sec. 24.004. JURISDICTION; DISMISSAL. (a) Except as provided by Subsection (b), a justice court in the precinct in which the real property is located has jurisdiction in eviction suits. Eviction suits include forcible entry and detainer and forcible detainer suits. A justice court has jurisdiction to issue a writ of possession under Sections 24.0054(a), (a-2), and (a-3).
(b) A justice court does not have jurisdiction in a forcible entry and detainer or forcible detainer suit and shall dismiss the suit if the defendant files a sworn statement alleging the suit is based on a deed executed in violation of Chapter 21, Business & Commerce Code.

Acts 1983, 68th Leg., p. 3515, ch. 576, Sec. 1, eff. Jan. 1, 1984. Amended by Acts 1985, 69th Leg., ch. 891, Sec. 1, eff. Aug. 26, 1985; Acts 1997, 75th Leg., ch. 1205, Sec. 1, eff. Sept. 1, 1997.
Amended by:
Acts 2011, 82nd Leg., R.S., Ch. 958, Sec. 1, eff. January 1, 2012.
Acts 2011, 82nd Leg., R.S., Ch. 1242, Sec. 3, eff. September 1, 2011.

Sec. 24.005. NOTICE TO VACATE PRIOR TO FILING EVICTION SUIT. (a) If the occupant is a tenant under a written lease or oral rental agreement, the landlord must give a tenant who defaults or holds over beyond the end of the rental term or renewal period at least three days' written notice to vacate the premises before the landlord files a forcible detainer suit, unless the parties have contracted for a shorter or longer notice period in a written lease or agreement. A landlord who files a forcible detainer suit on grounds that the tenant is holding over beyond the end of the rental term or renewal period must also comply with the tenancy termination requirements of Section 91.001.

(b) If the occupant is a tenant at will or by sufferance, the landlord must give the tenant at least three days' written notice to vacate before the landlord files a forcible detainer suit unless the parties have contracted for a shorter or longer notice period in a written lease or agreement. If a building is purchased at a tax foreclosure sale or a trustee's foreclosure sale under a lien superior to the tenant's lease and the tenant timely pays rent and is not otherwise in default under the tenant's lease after foreclosure, the purchaser must give a residential tenant of the building at least 30 days' written notice to vacate if the purchaser chooses not to continue the lease. The tenant is considered to timely pay the rent under this subsection if, during the month of the foreclosure sale, the tenant pays the rent for that month to the landlord before receiving any notice that a foreclosure sale is scheduled during the month or pays the rent for that month to the foreclosing lienholder or the purchaser at foreclosure not later than the fifth day after the date of receipt of a written notice of the name and address of the purchaser that requests payment. Before a foreclosure sale, a foreclosing lienholder may give written notice to a tenant stating that a foreclosure notice has been given to the landlord or owner of the property and specifying the date of the foreclosure.

(c) If the occupant is a tenant of a person who acquired possession by forcible entry, the landlord must give the person at least three days' written notice to vacate before the landlord files a forcible detainer suit.

(d) In all situations in which the entry by the occupant was a forcible entry under Section 24.001, the person entitled to possession must give the occupant oral or written notice to vacate before the landlord files a forcible entry and detainer suit. The notice to vacate under this subsection may be to vacate immediately or by a specified deadline.

(e) If the lease or applicable law requires the landlord to give a tenant an opportunity to respond to a notice of proposed eviction, a notice to vacate may not be given until the period provided for the tenant to respond to the eviction notice has expired.

(f) The notice to vacate shall be given in person or by mail at the premises in question. Notice in person may be by personal delivery to the tenant or any person residing at the premises who is 16 years of age or older or personal delivery to the premises and affixing the notice to the inside of the main entry door. Notice by mail may be by regular mail, by registered mail, or by certified mail, return receipt requested, to the premises in question. If the dwelling has no mailbox and has a keyless bolting device, alarm system, or dangerous animal that prevents the landlord from entering the premises to leave the notice to vacate on the inside of the main entry door, the landlord may securely affix the notice

on the outside of the main entry door.

(g)  The notice period is calculated from the day on which the notice is delivered.

(h)  A notice to vacate shall be considered a demand for possession for purposes of Subsection (b) of Section 24.002.

(i)  If before the notice to vacate is given as required by this section the landlord has given a written notice or reminder to the tenant that rent is due and unpaid, the landlord may include in the notice to vacate required by this section a demand that the tenant pay the delinquent rent or vacate the premises by the date and time stated in the notice.

Acts 1983, 68th Leg., p. 3515, ch. 576, Sec. 1, eff. Jan. 1, 1984.  Amended by Acts 1985, 69th Leg., ch. 891, Sec. 1, eff. Sept. 1, 1985;  Acts 1989, 71st Leg., ch. 688, Sec. 3, eff. Sept. 1, 1989;  Acts 1997, 75th Leg., ch. 1205, Sec. 2, eff. Sept. 1, 1997.

PROPERTY CODE

TITLE 5. EXEMPT PROPERTY AND LIENS

SUBTITLE B. LIENS

CHAPTER 51. PROVISIONS GENERALLY APPLICABLE TO LIENS

Sec. 51.0001. DEFINITIONS. In this chapter:

(1) "Book entry system" means a national book entry system for registering a beneficial interest in a security instrument that acts as a nominee for the grantee, beneficiary, owner, or holder of the security instrument and its successors and assigns.

(2) "Debtor's last known address" means:

(A) for a debt secured by the debtor's residence, the debtor's residence address unless the debtor provided the mortgage servicer a written change of address before the date the mortgage servicer mailed a notice required by Section 51.002; or

(B) for a debt other than a debt described by Paragraph (A), the debtor's last known address as shown by the records of the mortgage servicer of the security instrument unless the debtor provided the current mortgage servicer a written change of address before the date the mortgage servicer mailed a notice required by Section 51.002.

(3) "Mortgage servicer" means the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument. A mortgagee may be the mortgage servicer.

(4) "Mortgagee" means:

(A) the grantee, beneficiary, owner, or holder of a security instrument;

(B) a book entry system; or

(C) if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record.

(5) "Mortgagor" means the grantor of a security instrument.

(6) "Security instrument" means a deed of trust, mortgage, or other contract lien on an interest in real property.

(7) "Substitute trustee" means a person appointed by the current mortgagee or mortgage servicer under the terms of the security instrument to exercise the power of sale.

(8) "Trustee" means a person or persons authorized to exercise the power of sale under the terms of a security instrument in accordance with Section 51.0074.

Added by Acts 2003, 78th Leg., ch. 554, Sec. 1, eff. Jan. 1, 2004.

Amended by:

Acts 2007, 80th Leg., R.S., Ch. 903 (H.B. 2738), Sec. 1, eff. June 15, 2007.

Sec. 51.001. EFFECT ON OTHER LIENS. Except as provided by Chapter 59, this subtitle does not affect:

(1) the right to create a lien by special contract or agreement; or

(2) a lien that is not treated in this subtitle, including a lien arising under common law, in equity, or under another statute of this state.

Acts 1983, 68th Leg., p. 3525, ch. 576, Sec. 1, eff. Jan. 1, 1984.

Sec. 51.0011. DEFAULT ARISING FROM DELINQUENT AD VALOREM TAXES: INSTALLMENT AGREEMENTS. (a) Notwithstanding any agreement to the contrary, a debtor is not in default under a deed of trust or other contract lien on real property used as the debtor's residence for the delinquent payment of ad valorem taxes if:

(1) the debtor gave notice to the mortgage servicer of the intent to enter into an installment agreement with the taxing unit under Section 33.02, Tax Code, for the payment of the taxes at least 10 days before the date the debtor entered into the agreement; and

(2) the property is protected from seizure and sale and a suit may not be filed to collect a delinquent tax on the property as provided by Section 33.02(d), Tax Code.